MUNICIPAL TELEGRAPH & STOCK CO. v. WARD, Collector.

(Circuit Court, N. D. New York. April 2, 1904.)

1. INTERNAL REVENUE—WAR REVENUE ACT—TAX ON CONTRACTS FOR PURCHASE AND SALE OF STOCKS.

Plaintiff corporation was engaged in business as a stockbroker in conducting transactions respecting the purchase and sale of stocks to be settled with reference to the public market quotations of prices, within subdivision 3 of Schedule A of the War Revenue Act of July 13, 1898, c. 448, § 25, 30 Stat. 458, as amended by Act March 2, 1901, c. 806, § 8, 31 Stat. 943 [U. S. Comp. St. 1901, p. 2302]. Its business was transacted with numerous correspondents, on whose telegraphic orders it would report a purchase or sale, and forward the correspondent a memorandum such as is required by the statute. The correspondents were also dealing with customers, and their orders to plaintiff generally represented orders from their own customers, to whom they delivered a memorandum of each purchase or sale bearing a stamp as required by the act, but stating the transaction between the correspondent and the customer only. The customer was not named or known in the transaction between the correspondent and plaintiff. Held, that such transactions were transactions between principals, separate and distinct from those between the correspondents and their customers, and that plaintiff was subject to the tax on each memorandum given thereon.

Action to Recover Internal Revenue Taxes Paid.

John A. Delehanty, for complainant.

Taylor L. Arms, Asst. U. S. Atty., for defendant.

WALLACE, Circuit Judge. This is an action to recover the sum of $16,696.17, with interest from October 15, 1902, paid by the plaintiff to the defendant, as collector of internal revenue, under protest, and which the plaintiff claims was illegally exacted. The defense is that the sum exacted was the amount of a tax and penalties accruing to the government from the plaintiff pursuant to the provisions of subdivision 3 of Schedule A of the War Revenue Act of June 13, 1898, c. 448, § 25, 30 Stat. 458, as amended by Act March 2, 1901, c. 806, § 8, 31 Stat. 943 [U. S. Comp. St. 1901, p. 2302].

Subdivision 3 imposes a stamp tax upon every person who or corporation which engages in the business of making contracts or transactions respecting the purchase or sale, or purchase and sale, of stocks, bonds, or other securities, contemplating that the same may be closed or settled with reference to the public market quotations of prices made upon any exchange upon which the securities are dealt in, "and without a bona fide transaction on such exchange," of 2 cents on each $100 of the face value of all stocks or securities covered by each and all of such contracts or transactions; and it imposes the same tax upon every person who or corporation which shall conduct "what is commonly known as a bucket shop." It further requires every such person or corporation to deliver to the other party at the time of making the same a written memorandum containing a complete specification of the contract, to which the proper stamp shall be affixed before delivery.

Between July 24, 1901, and July 1, 1902, the plaintiff was a corporation engaged in the business of making contracts and transactions of the class described in subdivision 3; but, so far as appears by the proofs, it was not engaged in conducting a bucket shop. Its business of this character was transacted with numerous brokers, who were engaged in business similar to that of the plaintiff, or in conducting bucket shops, located in various parts of the country, called "correspondents," and the course of the business appears to have been this: Upon the order of one of these correspondents by telegram to buy or sell a specified security if the market quotations warranted the execution of the order, the plaintiff would notify him by telegram that it had bought or sold, as ordered; and on the same day would send him a memorandum such as the statute requires of this and all other purchases or sales made in execution of his orders during the day, and a statement of his debit and credit items in account. When the credit items exceeded the debit items, the plaintiff would send a check to the correspondent for the balance. If the debit items exceeded the credit items, the correspondent would be expected to deposit the balance on the next morning in a designated local bank to the credit of the plaintiff. Each transaction between the plaintiff and the correspondent was identified by a number assigned to it in the consecutive order of the dealings, and this was transcribed in the books of both. These correspondents were at the same time dealing with customers who desired to engage with them in similar contracts or transactions, and their orders to the plaintiff generally represented orders from their own customers to buy or sell securities. Upon receiving notice from the plaintiff that a given order had been filled, the correspondent would notify the customer, and, if the customer had paid to him the required "margin," would deliver to him a memorandum

.such as the statute requires. He would also number this memorandum with the number which had been assigned to the transaction between himself and the plaintiff. The memorandum evidenced a transaction between the correspondent and the customer only. The customer was not named or known in the transaction between the correspondent and the plaintiff; and the memorandum delivered by the plaintiff to the correspondent evidenced a contract between them only. The commissions charged by the correspondents to their customers were a quarter of 1 per cent. on the par value of the securities covered by the contracts or transactions. The commissions charged by the plaintiff to the correspondents were one-half of that amount. The correspondents placed on the memorandums delivered to their customers the stamps required by subdivision 3, and canceled the stamps. The plaintiff did not stamp the memorandums of sales or purchases sent to its correspondents.

The tax in controversy was assessed by the defendant upon the transactions between the plaintiff and the correspondents which took place between July 24, 1901, and July 1, 1902. The plaintiff insists that the tax was paid by the stamps affixed by the correspondents upon the memorandums delivered by them to their customers. If this contention is correct, the plaintiff is entitled to recover; otherwise it has no cause of action. If the correspondents were agents of the plaintiff and of their customers, so that in each contract or transaction the plaintiff and the customers were the real principals, it is plain that the contract or transaction is subject to but one tax. It would be in law a single contract or transaction between the plaintiff and the customer, the correspondent being a mere intermediary, and not a dual one between the plaintiff and its correspondent on the one hand and the correspondent and its customer on the other. The evidence does not warrant this view of the relations between the correspondents, their customers, and the plaintiff. It indicates that the correspondents were principals in their transactions with their customers upon the one hand and with the plaintiff upon the other; that the plaintiff dealt with them as principals, and neither knew nor cared to know any third party in their transactions with them; and that the plaintiff relied exclusively upon the responsibility of the correspondents in its dealings with them, although it was aware of their relations with customers. In a limited sense the correspondents were agents for the customers, because they were expected to execute orders to enter into contracts of purchase and sale given to them by the customers. In no sense were the correspondents agents of the plaintiff. They stood in no fiduciary relation to the plaintiff. They had no duties to perform for the plaintiff. They were not employed or paid by the plaintiff, their relations were none other than that of principal dealing with principal. When they made a contract to buy or sell with the plaintiff, they were at liberty to treat the contract as their own, and the plaintiff understood that they were at liberty to do so. In paying the tax by stamping the memorandums delivered to their customers the correspondents were merely paying their own tax upon their own transactions. The facts materially distinguish the case from that in United States v. Clawson (D. C.) 119 Fed. 994, which is relied upon by the plaintiff.

The conclusion is that the transactions between the correspondents and the plaintiff were distinct and independent transactions, upon which the plaintiff was required by the statute to pay the tax.

Judgment is accordingly ordered for the defendant.