# BOARD OF TRADE OF CITY OF CHICAGO v. HAMMOND ELEVATOR COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 215.   Argued April 13, 1905.—Decided May 29, 1905.

The authorities, holding that the right of appeal to this court from the Circuit Court, under § 5 of the act of March 3, 1891, is limited to cases where the jurisdiction of the Federal court as a Federal court is put in issue and that questions of jurisdiction applicable alike to the state and the Federal courts are not within its scope, apply to questions arising after a valid service has been made and not to the question of whether jurisdiction has or has not been acquired by proper service.

This court can review by appeal under § 5 a judgment of the Circuit Court dismissing the bill on the sole ground that jurisdiction had never been acquired over the defendant, a foreign corporation, for lack of proper service of process.

A Delaware corporation having its principal office in Indiana, and continuously carrying on a grain and stock brokerage business through the same persons in Illinois under an arrangement practically equivalent to agency, *held*, under the circumstances of this case, and in view of the statutes of Illinois as to service on foreign corporations, to be carrying on business in Illinois, and that service on such persons of process in a suit against it in the Circuit Court of the United States for Illinois was sufficient.

THIS is an appeal directly to this court from a decree of the Circuit Court dismissing for want of jurisdiction a bill filed by the Board of Trade of the City of Chicago, an Illinois corporation, against the Hammond Elevator Company, a Delaware corporation, and a citizen of that State.

The basis of the bill was that the appellant had a property right in the quotation of prices in transactions made within its exchange; that the defendant had entered into a conspiracy with others to steal, and was using such quotations, and prayed an injunction. A subpœna was issued in the usual form, requiring the Hammond Elevator Company to appear and answer the bill, and was afterwards returned by the marshal as

served within the Northern District of Illinois by delivering a copy of the same "to Albert M. Babb, agent for the Hammond Elevator Company at Peoria," and also "by reading the same to and within the presence and hearing of John L. Dickes, a member of the firm of Battle & Dickes, agents of said company," as well as upon Battle. On the day following the service the elevator company entered a special appearance, and moved the court to set aside the service of the subpœna by the marshal, on the ground that the return was untrue in fact and insufficient in law, and prayed judgment of the court whether it should be compelled to appear or plead to the bill of complaint, because it had not been served with process, and because the defendant was not at the date of filing the bill, or at any other time, within the State of Illinois; that it is not a resident of such State, but is a Delaware corporation, and its principal place of business is outside the State of Illinois.

This motion of the elevator company was referred to a master to take testimony, and report the same with his conclusions of law. The master filed his report in the Circuit Court, recommending that the motion of the defendant to quash the service of process be sustained; whereupon counsel for plaintiff stated in open court that he was unable to make any other or different service upon the defendant, and it was ordered that the bill be dismissed as to the Hammond Elevator Company. The bill was also dismissed as to the Western Union Telegraph Company, which had been made a party by an amendment to the original bill. Thereupon appellant appealed to this court upon the same question of jurisdiction, praying that the appeal be allowed and said question be certified, which was done.

*Mr. Henry S. Robbins* for appellant:

The record presents a question of jurisdiction within § 5 of the act of 1891. *O'Neal* v. *United States,* 190 U. S. 36.

This court has uniformly upheld its jurisdiction to review,

upon direct appeal or writ of error under section 5, *any* question of jurisdiction—whether of the subject matter; *Wetmore* v. *Rymer*, 169 U. S. 115; *Huntington* v. *Laidley*, 176 U. S. 668; *Interior Construction Co.* v. *Gibney*, 160 U. S. 217, or of the person of the defendant. *Shepard* v. *Adams*, 168 U. S. 618; *Societe Fonciere* v. *Milliken*, 135 U. S. 304; *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406; *Goldey* v. *Morning News*, 156 U. S. 518. Conversely the Circuit Courts of Appeals declined to entertain such cases. *Compress Co.* v. *American Co.*, 125 Fed. Rep. 196.

As to the phrase "in such cases the question of jurisdiction alone shall be certified," see act of April 29, 1802, ch. 31, § 6; § 652 of the Rev. Stat., act of June 1, 1872, which required the question certified upon a disagreement of the judges to be a single and specific question of law and not questions of fact, and the certificate was required to state the facts or parts of the record necessary to properly present that question. *California Paving Co.* v. *Molitor*, 113 U. S. 609. The certificate was the only record in this court and was required to be complete in itself, subject to the right of this court to order up the record itself.

At first the expressions of this court seemed to indicate that § 5 of the act of 1891 contemplated this kind of a certificate. *Maynard* v. *Hecht*, 151 U. S. 324. Then a difference was noted between requiring a certificate, which should state the question to be decided and all of the case that was necessary to decide it, and one whose only purpose was to establish a fact, upon which this court's jurisdiction depended.

Congress by § 5 undoubtedly contemplated only a certificate of the second kind.

This court, under § 5, has not only reviewed jurisdictional cases involving questions of fact, and of mixed law and fact, *Wetmore* v. *Rymer*, 169 U. S. 115; *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406; *Geer* v. *Same*, 190 U. S. 428, but has also held that there need not in some cases be any certificate at all; but that the question may appear either "by the terms

of the decree appealed from and of the order allowing the appeal, or by a separate certificate of the court below;" and that, where the judgment was for defendant upon a preliminary defense of a want of jurisdiction,—the question of jurisdiction being thus the only one involved,—and the appeal is allowed upon this question alone, no certificate is necessary. *United States* v. *Jahn*, 155 U. S. 109; *In re Lehigh Min. & Mfg. Co.*, 156 U. S. 322; *Shields* v. *Coleman*, 157 U. S. 168; *Interior Construction Co.* v. *Gibney*, 160 U. S. 217; *Smith* v. *McKay*, 161 U. S. 355; *Huntington* v. *Laidley*, 176 U. S. 668; *Excelsior Co.* v. *Pacific Co.*, 185 U. S. 282; *Arkansas* v. *Schlierholz*, 179 U. S. 598; *Courtney* v. *Pradt*, 196 U. S. 89.

This record, as already shown, more than meets the requirements of these cases, as respects the certification of the question of jurisdiction.

The service in this case was adequate.

The undisputed facts show that, at the time of the service of process, the Hammond Company was, in contemplation of the law, transacting business in Illinois through these correspondents as its agents, so as to make service upon either of them a valid service upon it.

The question is what is the real relation of the parties to each other and the business. *Italian-Swiss Colony* v. *Pease*, 194 Illinois, 98; *Conn. Mut. Ins. Co.* v. *Spratley*, 172 U. S. 602, 615; *Norton* v. *Atchison R. R. Co.*, 61 Fed. Rep. 200; *Smith* v. *West. Un. Tel. Co.*, 84 Kentucky, 664; *Central Stock Exchange* v. *Board of Trade*, 196 Illinois, 396; *Cone* v. *Tuscaloosa Co.*, 76 Fed. Rep. 891.

Under the circumstances public policy will not permit the defendant to claim that these correspondents are not its agents, thus enabling it to enjoy the privileges of extending its business into Illinois, without incurring a corresponding liability to be sued there.

To constitute a legal service of *mesne* process on a corporation of another State (1) the writ must be personally served within the jurisdiction, upon its officer or agent, and (2) the

company must, within the contemplation of the law, be doing business within the State.

As a foreign corporation enters a State only by comity and not by right, *Paul* v. *Virginia*, 8 Wall. 168, the Illinois statute, Rev. Stat., ch. 32, § 26, is a lawful enactment and authorizes service of process upon any agent, *C. & R. I. R. R.* v. *Fell*, 22 Illinois, 333. It differs from the statutes of some States, which require service upon the "general," or "managing," or "business," agent. This statute applies to foreign corporations. *Midland Pac. Ry. Co.* v. *McDermid*, 91 Illinois, 170.

Liability to be sued and served like a home corporation, is one of the liabilities that Illinois, by § 26, imposes upon foreign corporations as a condition of doing business in the State. *Wilson Packing Co.* v. *Hunter*, 8 Biss. 429; *Barrow Steamship Co.* v. *Kane*, 170 U. S. 100.

By availing itself of the privilege of doing business in a State, a foreign corporation impliedly assents to be there sued and served in the mode provided by the state statute, provided this does not violate the fundamental principle that requires notice of a suit before a party can be bound by it. *St. Clair* v. *Cox*, 106 U. S. 350; *Railroad Company* v. *Harris*, 21 Wall. 65, 81; *Ex parte Schollenberger*, 96 U. S. 369; *Merchants' Manufacturing Co.* v. *Grand Trunk Ry. Co.*, 13 Fed. Rep. 358; *Amy* v. *Watertown*, 130 U. S. 301; *Shepard* v. *Adams*, 168 U. S. 618.

In admiralty suits,—which, like equity cases, are not within the statute requiring conformity with the state practice,—service upon a foreign corporation under the state law is sufficient. *In re Louisville Underwriters*, 134 U. S. 488; *Doe* v. *Springfield B. & M. Co.*, 104 Fed. Rep. 684. In chancery cases service of process under the state law is sustained. *Evansville Courier Co.* v. *United Press*, 74 Fed. Rep. 918; *McCord Lumber Co.* v. *Doyle*, 97 Fed. Rep. 22.

As to the other requisite of a legal service which is that the foreign corporation must be doing business within the State,

and what is a sufficient doing of business within the State, see *St. Clair* v. *Cox*, 106 U. S. 350; *Connecticut Ins. Co.* v. *Spratley*, 172 U. S. 615; *In re Hohorst*, 150 U. S. 653; *Block* v. *Railroad Co.*, 21 Fed. Rep. 529; *Denson* v. *Chattanooga Assn.*, 107 Fed. Rep. 777; *U. S. Savings & L. Co.* v. *Miller*, 47 S. W. Rep. 17; *Van Dresser* v. *Oregon R. & N. Co.*, 48 Fed. Rep. 202; *Palmer* v. *Chicago Herald Co.*, 70 Fed. Rep. 886; *Locke* v. *Chicago Chronicle Co.*, 107 Iowa, 390. Furthermore the Hammond Company is transacting business in Illinois, because its bets with these traders are Illinois contracts.

An offer becomes a contract, as soon as the acceptance is committed to the regular mail, or a telegraph company. But, according to the better reasoned cases, the rule is otherwise when the acceptor commits his acceptance to his own agent or an agency within his control. *In re London & Northern Bank*, L. R. (1900) 1 Ch. Div. 220; *Thayer* v. *Middlesex Mut. Fire Ins. Co.*, 27 Massachusetts, 325; *Bryant* v. *Booze*, 55 Georgia, 438.

See cases holding mail contracts with insurance companies to be contracts of the State of the applicant, despite recitals in the policies seeking to make them contracts of the State of the company's home office. *Equitable Life Assurance Soc.* v. *Clements*, 140 U. S. 226, 232; *Wall* v. *Equitable Life Assurance Soc.*, 32 Fed. Rep. 273; *Hicks* v. *National Life Ins. Co.*, 60 Fed. Rep. 690; *Equitable Life Assurance Soc.* v. *Winning*, 58 Fed. Rep. 541; *Berry* v. *Knight Templars*, 46 Fed. Rep. 439; *Fletcher* v. *N. Y. Life Ins. Co.*, 13 Fed. Rep. 526; *Mut. Ben. Life Ins. Co.* v. *Robinson*, 54 Fed. Rep. 580. See also *Ransome* v. *State*, 91 Tennessee, 716; *Boyd Co.* v. *Coates*, 24 Ky. L. R. 730; *Central Stock Exchange* v. *Bendinger*, 109 Fed. Rep. 926, which are on "all fours" with this case.

*Mr. Lloyd Charles Whitman*, with whom *Mr. Jacob J. Kern* and *Mr. John A. Brown* were on the brief, for appellee:

The order of February 23, 1904, dismissing the bill as to the Western Union Telegraph Company without prejudice

is not such a final order as to be reviewable upon appeal by this court. *Davis* v. *Geisler*, 162 U. S. 290; *Fowler* v. *Hamill*, 139 U. S. 549.

The appeal from the order of February 23, 1904, dismissing the bill as to the Western Union Telegraph Company, when the appellee, Hammond Elevator Company, was out of court, does not in any way involve or authorize a review by this court of the order of February 23, 1904, dismissing the bill as to appellee, Hammond Elevator Company, and this notwithstanding the certificate of the trial judge.

In the absence of any showing in the record other than the statement of complainant in open court recited in the order of dismissal of the bill as to the Hammond Elevator Company, the order of December 21, 1903, was a voluntary non-suit and is not reviewable upon appeal.

Under the law and the evidence the court properly adjudged the service of subpœnas herein insufficient to confer jurisdiction of appellee, the Hammond Elevator Company, and therefore granted appellee, Hammond Elevator Company's motion to quash service of process herein. Hurd's Rev. Stat. Ill., 1903, ch. 32, p. 475, § 26; ch. 32, § 673, p. 486; ch. 110, § 5, p. 1400; 3 Starr & Curtis Ann. Ill. Stat., ch. 110, § 5, p. 2986; *Mineral Point R. R. Co.* v. *Keep*, 22 Illinois, 16; *Chicago & Rock Island Ry. Co.* v. *Fell*, 22 Illinois, 337; *Peoria Ins. Company* v. *Warner*, 28 Illinois, 433; *Union Pacific Ry. Co.* v. *Miller*, 87 Illinois, 45; *Midland Ry. Co.* v. *McDermid*, 91 Illinois, 170; *Hannibal & St. Joe R. R. Co.* v. *Crane*, 102 Illinois, 349; *Italian-Swiss Colony Co.* v. *Pease*, 194 Illinois, 98, 106; *March-Davis Co.* v. *Strowbridge Lith. Co.*, 79 Ill. App. 683; *Havens & Geddes Co.* v. *Diamond et al.*, 93 Ill. App. 557; *Wall* v. *Chesapeake C. & O. R. R. Co.*, 95 Fed. Rep. 398; *Blake* v. *Railroad Co.*, 21 Fed. Rep. 529.

Under the averments, if true, of the motion to quash, the Circuit Court had no jurisdiction of appellee, Hammond Elevator Company, by virtue of the alleged service of process.

Federal courts in common law actions follow the statutes

of the respective States in regard to service on corporations under the statute which provides for conformity with the state practice in actions at law. 2 Foster's Fed. Prac., 3d ed., pp. 806, 810.

The practice in equity cases is not dictated by statute, but in such cases the state practice merely furnishes a code which the Federal courts are apt to follow. 1 Foster's Fed. Prac., 3d ed., p. 254.

The state statute must be reasonable and the service provided for be only upon such agents as may properly be deemed representatives of the foreign corporations. *St. Louis Wire Mill Co.* v. *Consolidated Barb Wire Co.*, 32 Fed. Rep. 802; *Good Hope Co.* v. *Railway Barbed Fencing Co.*, 22 Fed. Rep. 635; *Goldey* v. *Morning News*, 156 U. S. 518; *D'Arcey* v. *Ketchum*, 11 How. 165.

Three conditions must occur. First, the corporation must be carrying on its business in such foreign State or district. Second, such business must be transacted or managed by some agent or officer appointed by and representing the corporation in such State. Third, there must be some local law making such corporation amenable to suit there as a condition expressed or implied of doing business in the State. *United States* v. *Am. Bell Telephone Co.*, 28 Fed. Rep. 17, 35; *Midland Ry. Co.* v. *McDermid*, 91 Illinois, 173.

For general discussion of principles involved see *St. Clair* v. *Cox*, 106 U. S. 350.

The averments of the motion to quash are, under the evidence, true. The transactions shown by the evidence do not show a doing of business by the Hammond Elevator Company within the State of Illinois or said district, and the relations between Battle & Dickes and Babb and the Hammond Elevator Company do not amount, in law, to such an agency as is contemplated by law for the service of process upon a non-resident foreign corporation. Cases *supra* and *Maxwell* v. *A., T. & S. F. R. Co.*, 34 Fed. Rep. 286; *N. K. Fairbanks Co.* v. *Cincinnati, N. O. & T. R. Ry. Co.*, 54 Fed. Rep. 420; *Evansville*

*Courier* v. *United Press*, 74 Fed. Rep. 918; *Wall* v. *C. & O. R. R. Co.*, 95 Fed. Rep. 398; *Doe* v. *Springfield Boiler & Mfg. Co.*, 104 Fed. Rep. 684; *Municipal Telegraph & Stock Co.* v. *Ward*, 133 Fed. Rep. 70.

The ultimate findings of the master form the evidentiary facts. *Municipal Tel. & Stock Co.* v. *Ward, Collector*, 133 Fed. Rep. 70, 72.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

The Circuit Court dismissed this appeal upon the ground that it had never acquired jurisdiction over the Hammond Elevator Company by the service of process upon Albert M. Babb and the members of the firm of Battle & Dickes, because they were not officers of the Elevator Company, which was a Delaware corporation, and had its principal place of business in the State of Indiana.

1. There is, however, a preliminary question in this court, that is, whether we can lawfully entertain this appeal under section 5 of the act of March 3, 1891, which provides that an appeal shall lie directly to this court "in any case in which the jurisdiction of the court is in issue; in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision."

The proper construction of this section has been the subject of frequent consideration in this court, and it has been definitely settled that it must be limited to cases where the jurisdiction of the Federal court, as a Federal court, is put in issue, and that questions of jurisdiction applicable to the state courts, as well as to the Federal courts, are not within its scope.

The earliest reported case on this subject is that of the *World's Columbian Exposition*, 18 U. S. Appeals, 42, in which the Circuit Court, sitting in equity, granted an injunction to prevent the opening of the Exposition grounds on Sunday. On appeal to the Circuit Court of Appeals the Chief Justice held that as

the power of the Circuit Court to hear the cause was not denied, the appellant contending only that the United States had not made a case cognizable in a court of equity, the jurisdiction of the Circuit Court was not in issue within the intent and meaning of the act. In *Smith* v. *McKay*, 161 U. S. 355, it was held, following the prior case, that the question whether the remedy was at law or in equity did not involve the jurisdiction of the Federal court as such, and the case was dismissed. A similar ruling was made in *Blythe* v. *Hinckley*, 173 U. S. 501.

The cases were fully reviewed in *Louisville Trust Company* v. *Knott*, 191 U. S. 225, in which the question involved was the respective rights of a receiver appointed by the state court and one appointed by the Circuit Court of the United States. It was held that the question was not one of jurisdiction within the meaning of the act of March 3, 1891, the court observing: "The question of jurisdiction which the statute permits to be certified to this court directly must be one involving the jurisdiction of the Circuit Court as a Federal court, and not simply its general authority as a judicial tribunal to proceed in harmony with established rules of practice governing courts of concurrent jurisdiction as between each other."

In *Bache* v. *Hunt*, 193 U. S. 523, Hunt, as receiver, filed an intervening petition for the reimbursement of certain amounts paid by him as receiver in the extinguishment of prior claims, which certain railroad bonds and stocks had been deposited to secure. A decree was made in his favor, and an appeal was taken to this court. It was said that "the jurisdiction of the Circuit Court was only questioned in respect to its general authority as a judicial tribunal, and not in respect of its power as a court of the United States. The established rules of practice as to bringing in parties to ancillary or *pro interesse suo* proceedings, and those governing courts of concurrent jurisdiction as between themselves, were alone involved." The appeal was dismissed.

In *Courtney* v. *Pradt*, 196 U. S. 89, a citizen of Wisconsin,

duly qualified as an executor in that State, was sued as such in Kentucky. Pradt demurred on the ground that the court had no jurisdiction, and the Circuit Court of the United States, to which the case had been removed, sustained the demurrer and dismissed the suit. It was said that the court had power to so adjudicate, and that the question decided was not one of the jurisdiction of the Circuit Court as a court of the United States, but one with respect to the law of Kentucky. The case was dismissed.

There is a distinction, however, between these cases which turn upon questions arising *after* a valid service of process upon the defendant, with respect to the mode of procedure, or the conflicting claims of the state and Federal courts, and certain other authorities which turn upon the validity of the service of process itself upon the defendants; in other words, which involve the jurisdiction of the court in any form over the defendant. The leading case is that of *Shepard* v. *Adams*, 168 U. S. 618. This case turned upon the validity of the service of the summons whereby the defendant was required to appear within ten days after such service, when by the law of the State he was allowed thirty days. The question was whether Rev. Stat. sec. 914, assimilating the practice, pleadings, forms and modes of proceedings in civil causes in the Federal courts to those obtaining in the state courts, applied to the time within which the defendant was required to appear in obedience to a summons. It was held that, as the rule of the Federal court was adopted in conformity with the rules then in force in the state courts, it was not bound to alter its rules every time the state courts saw fit to alter their rules, and that the Federal courts were at liberty to continue their rules without subservience to such changes. The point was made that the question involved was not the jurisdiction of the Federal court as such, and in reply to that suggestion Mr. Justice Shiras observed: "The present case differs from *Smith* v. *McKay*, in the essential feature that the contention is that the court below never acquired jurisdiction at all over

the defendant by a valid service of process. In such a case there would be an entire want of jurisdiction, and a judgment rendered without jurisdiction can be reviewed on a writ of error directly sued out to this court."

That paragraph is doubtless broader than the exigency of the case required, as the question involved was the validity of the service of process in the Federal court as distinguished from the state court, but in the recent case of *Remington* v. *Central Pacific Ry. Co., ante,* p. 95, it was accepted as applicable to the case of the validity of a summons from a state court, served upon a director of a railroad company in a State other than that in which the company was incorporated. The court denied a motion to set the service aside, whereupon the case was removed into the Circuit Court of the United States, and the defendant renewed its motion to set aside the summons. The motion was granted, and the action was dismissed for want of jurisdiction of the defendant. It was held, upon the authority of *Shepard* v. *Adams,* that this court had authority to review the judgment on writ of error.

While the case under consideration is distinguishable fron *Shepard* v. *Adams,* we think it is concluded by the case last cited, and therefore hold that we have jurisdiction to review the action of the Circuit Court in dismissing this bill.

2. The merits in the case are contained in the certificate of the District Judge, and involve the jurisdiction of the Circuit Court over the Hammond Elevator Company, by reason of the service in the State of Illinois upon Babb or Battle & Dickes, as agents of such company, and whether the service of process upon them gave the court jurisdiction over the company.

By the law of Illinois, Rev. Stat. ch. 32, sec. 26, "foreign corporations, and the officers and agents thereof, *doing business in this State,* shall be subjected to all the liabilities" of domestic corporations; and by chap. 110, sec. 5, "may be served with process by leaving a copy thereof with . . . any agent of said company found in the county."

The facts showing the relations between the parties served and the elevator company are substantially as follows:

The company maintains a place of business at Hammond, Indiana, and had under lease from the Western Union Telegraph Company the exclusive use during business hours of certain telegraph wires running from Hammond to certain offices in different cities in Illinois, including Peoria and Aurora, where the parties served with process lived. In the lease of these wires, signed by defendant, the offices of these "correspondents" are designated as offices of the defendant, and are contained upon regular printed forms prepared by the company. The cost or rental of these wires was paid to the telegraph company by the defendant. Over these wires the defendant caused to be transmitted continuous market quotations of the New York Stock Exchange to persons standing in relation of Babb and Battle & Dickes, who are called "correspondents," and who posted these quotations upon blackboards in their respective offices.

Customers resorting to the correspondents' offices, and desiring to trade in any one of the sixty different stocks whose quotations are posted, give a verbal or written order to buy or sell certain grain or stocks, which is transmitted by the correspondent in his own name over the private wire of the correspondent running into his office from the office of the defendant at Hammond, as an offer by the correspondent to buy from or sell to the defendant. Sometimes the price is mentioned by the customer, and sometimes not. In the latter case it is understood that the trade is to be at whatever the market is. When the order is given the correspondent exacts from the customer such margin as he sees fit, unless the customer already has money on deposit with the correspondent, or is of known financial responsibility. Defendant accepts these orders when the state of the market justifies, by return message over the same wire, the contents of which are communicated by the correspondent to the customer. The individuality of each trade is preserved throughout by a number

BOARD OF TRADE *v.* HAMMOND ELEVATOR CO. 437

given to it by the correspondent's operators at the outset. The correspondent upon receipt of this return message gives the trader a memorandum showing the trade and the price to which his margin carries it, and, except in case of a losing trade, where he has failed to protect himself by securing from the customer a sufficient margin, the correspondent neither participates in the loss nor the profit incurred in the trade. He derives as his compensation a fixed sum, whether the trade results in a profit to the defendant or to the customer. Through daily statements and daily settlements of the balance shown thereby, the correspondent remits to the defendant, through its local bank, whatever amounts are shown to be due from him to the defendant for margins, wire service, etc. When the trader wishes to close a trade thus opened the correspondent in like manner receives and transmits the order over his wire to the Hammond Company, giving to the telegram the number of the order already given to the trade. The order is executed at Hammond the same way as the opening order.

It is admitted by the defendant's counsel that the defendant does not desire to be subject to suit before the state and Federal courts of every State and District where it has correspondents, and that it has endeavored to arrange and conduct its business so as to avoid such contingency.

The relations of the correspondent with the elevator company are in each case fixed by formal contract, to the effect that the parties shall deal as principals, and that the relations of principal and agent shall neither exist or be held to exist. There is no evidence that the correspondents Babb and Battle & Dickes have claimed or represented themselves to be agents of the defendants.

The fact, however, that the relations between the defendant and its correspondents are, as between themselves, expressly disclaimed to be those of principal and agent, is not decisive of their relations so far as third parties dealing with them upon the basis of their being agents are concerned. *Mutual Life Insurance Company* v. *Spratley,* 172 U. S. 602. As was said

in this case, of the agents whose authority to receive service of process was denied by the defendants (p. 615): "In such case it is not material that the officers of the corporation deny that the agent was expressly given such power, or assert that it was withheld from him. The question turns upon the character of the agent, whether he is such that the law will imply the power and impute the authority to him, and if he be that kind of an agent, the implication will be made, notwithstanding a denial of authority on the part of the other officers of the corporation. . . . In the absence of any express authority, the question depends upon a review of the surrounding facts and upon the inference that the court might properly draw from them." See also *Italian-Swiss Colony* v. *Pease,* 194 Illinois, 98; *Commercial Ins. Co.* v. *Ives,* 56 Illinois, 402; *Union Ins. Co.* v. *Chipp,* 93 Illinois, 96; *Ind. Ins. Co.* v. *Hartwell,* 123 Indiana, 177; *Planters' Ins. Co.* v. *Meyers,* 55 Mississippi, 479; *Sprague* v. *Ins. Co.,* 69 N. Y. 128.

In this connection it was found by the master that "There can be no question that towards the customer the correspondent bears the relation of agent to his principal. The customer knows that the correspondent is not selling the stocks to him, or buying stocks from him, but is merely taking his orders for transmission. Hence, the correspondent's charge to the customer for his services is properly called a commission. The customer does not direct the correspondent from whom he is to purchase, or to whom he is to sell, as the latter is at libetry to purchase from or sell to the defendant, or elsewhere, as he chooses. In point of fact, perhaps, because of the facilities offered by the private wire, he almost invariably does purchase from or sell to the defendant."

The defendant has undoubtedly taken great pains to foreclose the idea that its correspondents are agents in any such sense as to render it liable for their acts, or to validate the service of process upon them as such agents. Each day the defendant enters upon his statement which he that day sends to the correspondent each trade it has that day accepted from

such correspondent. If the statement shows a debit balance, the correspondent deposits an approximate amount in a bank in his city to the credit of the defendant, which thus maintains an active bank account in each of such banks. If the statement results in a balance to the credit of the correspondent, a check of the defendant payable to the correspondent, and usually drawn upon the same local bank, where the deposits are made to defendant's credit, accompanies the statement. As a general thing the balance due on each day's transactions, as between the defendant and the correspondent, is approximately settled the next day. The defendant looks only to the correspondent in all trades. In case of a loss, if the correspondent has failed to secure sufficient margin from the customer, and is unable to collect the amount from him, the correspondent must stand the loss. The defendant charges up and retains the amount of its charge for wire services, in any event, as well as all losses of the correspondent on trades. The daily statements by defendant are made upon printed blanks, which contain the statement: "We have no agents." And upon the back is a printed statement to the effect that upon consideration of the defendant consenting to deal and contract with him as principal in buying and selling commodities, he agrees:

"'First. In all cases where I shall purchase from or contract to purchase from or shall sell to, or contract to sell to said Hammond Elevator Company any commodity, I will receive and pay for the commodity purchased, or contracted to be purchased from it, and will deliver the commodity sold, or contracted to be sold, to it.'

"'Seventh. That I am not, and will not, represent myself as being agent for said Hammond Elevator Company, but will represent that I have no authority to act for it. It is not responsible for anything that may be done by me.'

"But the defendant knows nothing of the customer. All its orders come from the correspondent in his own name. All funds received by him are sent to it through the bank by the

correspondent. All its statements are rendered to the correspondent. All its charges are made against, and all its credits entered in favor of, the correspondent. Indeed, so far as the evidence shows, there is no ground for claiming that the defendant knows that the correspondent has any customers, or that he is not dealing solely on his own account."

Notwithstanding these protestations and excessive precautions used to prevent the correspondent being held as agent, the method of business shows that the party really interested in the transaction is the defendant, and that the correspondents are compensated as if they were agents, and not principals. The correspondent charges his customers a commission of one-eighth of a cent a bushel on grain. The defendant keeps a regular book account with its correspondents, and in addition to charging up the margin against him, it makes an arbitrary charge on each deal, which is called on the statement of the correspondent "wire service," meaning a charge for the use of the private wire. This charge for wire service is a regular fixed percentage of the commission charged by the correspondent, which indicates that it is a commission under the guise of wire service, and such a charge upon any transaction of magnitude would be an exorbitant charge for use of the wire. An ordinary charge for wire service would depend upon the length of the message and distance transmitted, wholly irrespective of the amount of the transaction. But in this case, when a charge is made on a transaction involving a hundred shares, the charge is ten times greater than for a trade involving ten shares. This indicates something more than a charge made for the actual use of the wire, the amount of the service being the same in each case. The significance of this wire service is the more marked by the fact of the defendant company paying a fixed sum of $50 per month for the use of the wire.

The findings, moreover, show that while the correspondent takes the orders from his customers, he transmits them directly to the defendant, and no trade is effected until the return mes-

sage is received by the correspondent. While the identity of the customer is not disclosed to the elevator company, it is preserved by a number appropriate to each order; and there can be no doubt that any legal liability of the trader arising out of the transaction could be enforced by the defendant against the customer as soon as his identity was discovered. It is apparent from these transactions that the real trading is done between the customer and the elevator company, and that the functions of the correspondents are really those of agents and not of principals. There must be two principals, and only two, in every such transaction. Obviously the customer is one of them. We think it equally obvious that the elevator company is the other one, and that the profits appropriate to the transaction belong to the elevator company, and not to the correspondent, who is paid a commission for his services. If the correspondent be not the principal in this transaction, he must be the agent of one party or the other, and as his office is continuously open for the transaction of business, where he receives and executes orders, collects margins and deposits them to the credit of the defendant in a local bank, and apparently his transactions are entirely with the defendant, it would seem that he was rather the agent of the elevator company than of the customer, a conclusion which is fortified by the fact that the correspondent is compensated by a percentage of the amount charged the customer under the name of commission for the privilege of trading.

The real transaction in this case is undoubtedly artfully disguised, but notwithstanding the fact that the order is made and accepted at Hammond, and the margin is charged up at Hammond against the correspondent, and the profits or losses made there, we are of the opinion that in receiving, transmitting and reporting orders to the customers, receiving their margins, and settling with them for the profits of losses incident to each transaction, the correspondent is really "doing business" as the agent of the elevator company in Illinois, and may be properly treated as its agent for the service of

process. It is evident that if these correspondents be not regarded as agents in these transactions, it is possible for the defendant to establish similar correspondents in a dozen cities in at least a dozen States of the Union, and an enormous business be built up, in which the defendant company is the real principal, with no possibility of being sued except in the States of Indiana and Delaware.

If these correspondents were admitted to be agents of the elevator company it is not perceived how their methods of doing business would be materially changed. They would maintain an office in their own cities; would receive and transmit to their principals offers for trades made to them and report their acceptance or refusal, as is frequently done with respect to policies by agents of insurance companies; would receive and deposit the margins and attend to the settlement of differences. In fact, their position is analogous to that of an ordinary insurance agent, with power to receive applications and premiums, deliver policies and settle losses, and whose acts are binding on the principal, notwithstanding a provision in the application for the policy declaring such party shall be the agent of the insured.

*It results that the decree dismissing the bill as to the Hammond Elevator Company must be reversed, and the case be remanded for further proceedings.*

The CHIEF JUSTICE, MR. JUSTICE HARLAN and MR. JUSTICE DAY dissented upon the first point.