ELDREDGE et al. v. WARD, Collector, etc.

(Circuit Court, N. D. New York. August 1, 1907.)

INTERNAL REVENUE—STAMP TAXES—BUCKET SHOP TRANSACTIONS.

A bucket shop which made contracts for the purchase and sale of stocks and commodities with customers, and which executed such contracts by pretended purchases and sales through another bucket shop, which had no relations or dealings with such customers, *held*, under the evidence, not to be an agent of the latter, but to conduct a separate business, so that both transactions were subject to the stamp tax imposed by War Revenue Act June 13, 1898, Schedule A, subd. 3, c. 448, 30 Stat. 458, as amended by Act March 2, 1901, c. 806, 31 Stat. 943 [U. S. Comp. St. 1901, p. 2302].

Action to recover money paid under the provisions of subdivision 3 of Schedule A of the war revenue act of June 13, 1898 (30 Stat. 458, c. 448), as amended by the act of March 2, 1901 (31 Stat. 943, c. 806 [U. S. Comp. St. 1901, p. 2302]). The amount involved is about $1,804.88 aside from interest.

Eugene D. Flanigan, for plaintiffs.
Taylor L. Arms, Asst. U. S. Atty., for defendant.

RAY, District Judge. On the trial of this action a wide latitude was given the reception of evidence that all the facts might fully appear. That the plaintiffs at the time or times in question were engaged in running or conducting what is commonly known as a bucket shop and bucket shop business is clearly shown by the evidence, and, to my mind, cannot be questioned. That the so-called "Stock, Grain & Provision Company" was at the same time running and conducting an independent bucket shop and bucket shop business in the city of New York clearly appears. It clearly appears that the plaintiffs were not agents or servants of such Stock, Grain & Provision Company. They were not responsible to it, or subject to its control or directions. Neither party could have called the other to account in any of the matters involved in this controversy, or in the transactions in which they were engaged, except, probably, for the profits if any. They dealt with each other in a way. The agreement between them reads as follows:

"The Stock, Grain & Provision Company of New York, Limited.

"Dealers in Stocks, Bonds, Grain, Provisions and Oil.

"Capital $100,000.    (Full Paid.)

"Memorandum of Agreement.

"Made this twentieth day of May 1901 between the Stock, Grain & Provision Company of New York, Limited, party of the first part, and Eldredge & Co. of Albany, N. Y., party of the second part, witnesseth, that the said parties do mutually agree as follows:

"1. That the following are the terms and conditions upon which all contracts between them shall be had, unless others shall be agreed upon in writing.

"2. It is herein agreed that the Stock, Grain & Provision Company of New York (Limited) will make actual delivery of all bonds, stocks and produce and all other properties they trade in, and will pay cash for all the above named articles sold for immediate, or future delivery when properly transferred and delivered to this company.

"3. That all property sold by either party to the other is to be delivered as hereinafter stated on payment of the contract price.

"4. That if the advance or decline in the market price of any property beyond the contract price equals or exceeds the cash credits of the party of the second part with the party of the first part, the party of the first part shall thereupon be at liberty to close and terminate the contract as to that property; and any credits the party of the second part may have with the party of the first part may be applied by the party of the first part to any indebtedness of the party of the second part to the party of the first part and the party of the first part may close and terminate any or all other contracts and apply the payments or deposits and profits to the payment of any such indebtedness.

"5. That the place of delivery of grain and provisions is Chicago, at such houses as the party of the first part may elect, and of all other property the office of the party of the first part in New York City.

"6. That Chicago warehouse receipts for grain and provisions, and National Transit Co. Pipe Line certificates for oil may be delivered in lieu of the property represented by them.

"7. That the party of the second part has and shall have no authority to act as the agent of the party of the first part, and that he shall in no way hold himself out or represent himself to be the agent of the party of the first part.

"The Stock Grain & Prov. Co.

"C. Wesley, Holland, Mang.

"Eldredge & Co."

It is seen it was expressly provided that Eldredge & Co. were not the agents of Stock, Grain & Provision Company. It seems the business was done in about this way: A person desiring to speculate in stocks would go into plaintiffs' place of business in Albany, they being known as Eldredge & Co., and say buy so many shares of such a stock. Eldredge & Co. would telegraph Stock, Grain & Provision Company buy so many shares of such stock for number so and so giving a number. The customer was required when giving his order to Eldredge & Co. to put up "a margin" and also the amount of the war revenue tax on the transaction. This sum it appears was put to the credit of Stock, Grain & Provision Company. Of this, however, the customer had no knowledge. Stock, Grain & Provision Company would telegraph back "bought." That company did not buy the stock or any stock, or have any to sell, or sell any. Eldredge & Co. would then give the customer a slip as follows:

Stock, Grain and Prov. Co.
Dealers in
Stocks, Bonds, Grain and Provisions.
10 Wall St., New York.
No. ——

Eldredge & Co.
Correspondents
71 State St.,
Albany, N. Y.
Both Phones 798

Mr. ——

As per your order, have bought for your account and risk for delivery.
—— Shares —————— @ ——————Deposited on account ————
*Carried to ————————
Duplicate
Original Stamped

*The right is reserved to sell the above in case sufficient money is not deposited to carry said stock below market value.

—with the blanks filled. The customer was not informed he was dealing with any one except Eldredge & Co. If the stock went up, the customer could say sell, in which case Eldredge & Co. would telegraph "sell," and Stock, Grain & Provision Company would telegraph back "sold," when, in fact, no sale was made, and it had nothing to sell. In such case the gain to the customer on the wager or bet on the rise or fall of the market, if any, would be paid by Eldredge & Co. If the market went down and the customer did not keep his margin good, of course, he was out what he had put up and the money stood to the credit of Stock, Grain & Provision Company and was divided between it and Eldredge & Co. Each day Stock, Grain & Provision Company sent Eldredge & Co. a statement as follows:

Cable address: Willianna. We have no Agents.
Long Distance Phone.
The Stock, Grain and Provision Company, Of New York, Limited.
Capital $200,000. Full paid.
Dealers in Stocks, Bonds, Grain and Provisions,
10 Wall Street,          Established 1893.
New York, ———————— 190

C. Wesley Holland, Manager.
Walton O. Snyder, Secretary.

Dear Sir:—We solicit and will receive no business except with the understanding that the ACTUAL DELIVERY of property bought or sold upon orders is in all cases contemplated and understood. Our transactions with you today are as follows:          E. & O. E.

| Numbers | We sell to you | We buy of you | Article | Price | Deposit |
|---|---|---|---|---|---|

As per our written agreement.

| Remarks | Deposit | Number | Price | Settlements |
|---|---|---|---|---|

—the blanks being filled. Stock, Grain & Provision Company would stamp a duplicate of this with the proper war revenue stamps. Eldredge & Co. did not stamp or at the time pay the tax on the transaction at their end of the line. Subsequently they were required to do so, and under protest did pay, and then brought this action to recover back the money paid as tax.

The contention of plaintiffs is that there was but one business carried on and but one transaction; that they were mere agents of Stock,.

Grain & Provision Company and that it was all one thing, and that, as Stock, Grain & Provision Company paid the tax by putting stamps on the statement of each day's business, the full tax was paid, and Eldredge & Co., mere agents, assistants, servants, in the transactions and business, could not be required lawfully to pay a second tax. I hold under the evidence that Eldredge & Co. were not agents or servants of Stock, Grain & Provision Company; that they carried on a separate and distinct business. True, the two bucket shops aided each other and divided the profits, but there was "a business" at each end of the line subject to tax. Eldredge & Co. dealt with customers at their end, Albany, and Stock, Grain & Provision Company dealt with Eldredge & Co. independently. There was no contractual relation between these customers and Stock, Grain & Provision Company.

The complaint must be dismissed, with costs.