METROPOLITAN STOCK EXCHANGE v. GILL, Internal Revenue Collector.

(Circuit Court of Appeals, First Circuit. October 24, 1912.)

No. 957.

INTERNAL REVENUE (§ 19*)—WAR REVENUE ACT—CONTRACTS FOR PURCHASE AND SALE OF STOCKS—TAXATION.

Plaintiff, a stockbroker, was engaged in the purchase and sale of stocks, within War Revenue Act June 13, 1898, c. 448, § 25, subd. 3, Schedule A, 30 Stat. 458 (U. S. Comp. St. 1901, p. 2302), providing a stamp tax on the memorandum of such agreements. Under the circumstances of the case stated in the opinion, *held*, that Municipal Co. v. Ward, 138 Fed. 1006, 70 C. C. A. 284, and Eldridge v. Ward, 174 Fed. 402, 98 C. C. A. 619, do not apply, and there is only one stamp tax payable.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 39–41; Dec. Dig. § 19.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by the Metropolitan Stock Exchange against James D. Gill, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Reversed.

Gilbert F. Ordway, of Boston, Mass. (Clark & Ordway, of Boston, Mass., on the brief), for plaintiff in error.

William H. Garland, Asst. U. S. Atty., of Boston, Mass. (Asa P. French, U. S. Atty., of Boston, Mass., on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This was a suit brought by the corporation plaintiff below, which we will call the plaintiff here, against the collector of internal revenue for the district of Massachusetts, on a claim arising under paragraph 3 of Schedule A of the War Revenue Act, so called, of June 13, 1898 (Act June 13, 1898, c. 448, 30 Stat. 458), as amended by Act March 2, 1901, c. 806, § 8, 31 Stat. 943, 944 (U. S. Comp. St. 1901, p. 2302). This is the same statute, and the suit was of the same general nature, as shown and appeared before the courts in the Second circuit in Municipal Telegraph & Stock Co. v. Ward (C. C.) 133 Fed. 70, affirmed by the Circuit Court of Appeals in 138 Fed. 1006, 70 C. C. A. 284, and Eldredge v. Ward (C. C.) 155 Fed. 253, affirmed by the Circuit Court of Appeals in 174 Fed. 402, 98 C. C. A. 619.

There was a motion in the Circuit Court to dismiss the case for want of jurisdiction, which was refused; and the action of the Circuit Court in that respect was so clearly right that we need not comment upon it.

Judgment in the Circuit Court on the merits was entered for the collector, on the strength, as we understand, of these decisions of the Circuit Court of Appeals for the Second circuit, and, ac-

cording to our usual practice, we should feel bound to follow the results in that circuit, if the facts here were the same as there; but they are essentially different. The issue involved in the Second circuit, which the United States claimed is the same as that involved here, is best stated by quoting the syllabus in Municipal Telegraph & Stock Co. v. Ward (C. C.) 133 Fed. 70, already referred to, as follows:

"Plaintiff corporation was engaged in business as a stockbroker, in conducting transactions respecting the purchase and sale of stocks to be settled with reference to the public market quotations of prices, within subdivision 3 of Schedule A of the War Revenue Act of July 13, 1898, c. 448, § 25, 30 Stat. 458, as amended by Act March 2, 1901, c. 806, § 8, 31 Stat. 943 (U. S. Comp. St. 1901, p. 2302). Its business was transacted with numerous correspondents, on whose telegraphic orders it would report a purchase or sale, and forward the correspondent a memorandum such as is required by the statute. The correspondents were also dealing with customers, and their orders to plaintiff generally represented orders from their own customers, to whom they delivered a memorandum of each purchase or sale bearing a stamp as required by the act, but stating the transaction between the correspondent and the customer only. The customer was not named or known in the transaction between the correspondent and plaintiff. Held, that such transactions were transactions between principals, separate and distinct from those between the correspondents and their customers, and that plaintiff was subject to the tax on each memorandum given thereon."

It was there found as a matter of fact that the transactions were between the Municipal Telegraph & Stock Company and its correspondents dealing with it, and that each was acting as an independent dealer, so that there were two purchases and sales, namely, one between the Mutual Telegraph & Stock Company and its respondents, and one between each correspondent and his customers. These were of the character described on page 72 of the opinion of the court, as follows:

"In no sense were the correspondents agents of the plaintiff. They stood in no fiduciary relation to the plaintiff. They had no duties to perform for the plaintiff. They were not employed or paid by the plaintiff; their relations were none other than that of principal. When they made a contract to buy or sell with the plaintiff, they were at liberty to treat the contract as their own, and the plaintiff understood that they were at liberty to do so."

The Circuit Court of Appeals, in affirming this decision in 138 Fed. 1006, 70 C. C. A. 284, said as follows:

"We do not think it necessary to add anything to the opinion of the Circuit Judge. The evidence entirely warrants the finding of facts therein set forth, and upon those facts we fully concur in the conclusion that the dealings between plaintiff and its correspondents were dealings between principals and independent of the correspondents' dealings each with his own customers. The judgment is affirmed."

Thus these courts found that, as a matter of fact, the plaintiff there and its correspondents were independent principals, and their transactions were independent of the correspondents, each dealing with its own customers.

We need not examine particularly Eldredge v. Ward, because essentially the findings of the facts and the law were the same as in the other case referred to, the details having merely got turned around.

The facts here were of an entirely different character. They show that the entire line of dealings between the plaintiff and its correspondents' customers constituted only one purchase and one sale. The correspondents had stamped their contracts, and thus had discharged the tax on the entire chain of dealings from beginning to end; so that what the plaintiff afterwards paid was merely a second tax on the same thing, which it is entitled to recover back.

This case was sent by the Circuit Court to an auditor, and what we state further is fully sustained by what was found by the auditor.

The first step in each transaction was that the plaintiff "had contracts, mostly oral, with certain brokers," called "correspondents," and that by virtue of these contracts these correspondents turned into the plaintiff all orders for the purchase and sale of certain stocks. This gave shape and color to whatever followed, and governed the whole of what followed, as far as this case is concerned.

The next step was that one of the plaintiff's correspondents, for example, Varina, received orders from a customer, for example, Brown, to buy certain stocks. Varina testified that he did no business, except to transmit the orders to the plaintiffs as their correspondent by wire, which they furnished him. He also testified that sometimes customers would give orders for themselves directly, but "usually the customer came to the office and gave an order, and this order was transmitted to the plaintiff; and on its acceptance by the plaintiff he issued a contract to the customer," as shown in the case. He also testified:

"The plaintiff had a city office in Boston, where a board for the marking of quotations thereon was maintained, and it there conducted a general business for the buying and selling of stocks, grains and cotton. It also maintained a general office in Boston, where the bookkeeping and management of its country business, so called, occurred.

"The plaintiff had contracts, mostly oral, with certain brokers in various cities in New England, New York state, and in Canada by which these brokers, or, as they were called, 'correspondents,' turned in all orders for the purchase and sale of the above stocks and commodities to the plaintiff. The plaintiff had no personal dealings with the customers, and did not know their names. The correspondents saw the customers, who gave them orders for the purchase of certain stocks or commodities at certain prices. The correspondents thereupon entered the names of the customers in a book, and against each name a certain serial number was placed, and they then transmitted the orders of the customers without the customers' names to the plaintiff by telegraph over private wires which were furnished free to the correspondents by the plaintiff, and for which the plaintiff paid. If the terms of the orders were such as the plaintiff thought advisable to accept, such acceptance was wired back to the correspondents by the plaintiff, using the serial number for each transaction which had been transmitted by the correspondent in the first instance; whereupon the correspondent would complete the purchase with the customer and have him sign a contract therefor. The customer at the same time would make a deposit with the correspondent of a certain sum of money, which was to protect the correspondent from an adverse fluctuation of the stock in the market to the extent of a certain number of points. This margin was generally for three points, and, when the security was exhausted, the plaintiff would sell the stock to protect itself, unless the correspondent had marked the order 'Protect,' in which case the

plaintiff would wire for more margin, which the correspondent would get from the customer. The same procedure was followed if the customer, instead of buying in the first instance, wanted to sell a certain stock short.

"If the terms of the order of purchase or sale were such that the plaintiff could not accept them, it wired its refusal back to the correspondent, who thereupon informed the customer. If the customer, after purchasing the stock, wished at a later time to sell, the correspondent wired that order to sell to the plaintiff, who made the sale, wired back 'Sold,' and if there was a balance in favor of the customer, it was paid by the correspondent to him. In such cases, the plaintiff did not actually buy or sell these stocks for the customers, but entered them as bought and sold on its option ledgers, so that the transaction was really one of bookkeeping. At the time the order was accepted, the correspondent charged and took from the customer a commission of one-quarter of 1 per cent. of the market values of the stocks purchased or sold, which commission was divided equally between the plaintiff and the correspondents, and no further commission was charged when the transaction was concluded, either by a sale of the stock purchased or by a covering of the stock sold short.

"At first the plaintiff company sent its statements of the day's transactions to the correspondent, stamped for the amount of such business, but after a ruling by the Treasury Department the correspondents bought the stamps and affixed them to the contract with the customer, and canceled them, and the customer repaid the correspondent the amount of the stamps. The plaintiff, after said ruling, did not stamp any of the papers in regard to these transactions."

Under these circumstances, the contract was absolutely finished when the plaintiff accepted the order; and the sale was then made, and not till then, subject to giving the memorandum referred to, which merely put it in a form not to be disputed. That memorandum, when given, showed what was the actual fact, that the contract was between Varina, as agent of the customer, and the plaintiff. There was no other contract, and therefore no other sale.

All the other matters were purely incidents, not affecting the substance of the transaction; as, for example, while the memorandum already quoted showed for itself that Varina made the purchase in his own name, and the plaintiff did not necessarily know the name of the customer, this did not affect the substance of the contract, because generally brokers' contracts are made in that way, leaving, under the well-settled rules of law, the two parties whom the broker represents, principals towards each other whenever their identity becomes known. So, also, the fact that Varina for certain purposes became the agent for both parties involves no difficulty, because, where it is known, as, for example, in the case of a broker, that the agent is acting for both parties, there is nothing in law or in usage which questions the transaction.

Also, the fact that Varina guaranteed the plaintiff against default on the part of the customer is not of importance, because in that respect Varina stood the same as the ordinary commission merchant who receives a guaranty commission. So the fact that Varina kept an account current of all the transactions, and settled with the plaintiff only the balance, is in accordance with the custom of brokers having many transactions for the same principal, is a mere matter of convenience, and is undisputably the practice of all clearing houses. In truth, the situation is so simple, and so much

in accordance with the fundamental rules of commercial dealings, that it is hardly possible that any extent of reasoning or citation of authority could affect it. The agency from both parties to Varina is established; and a sale was effected by the meeting of the minds of the two principals, and there was only one contract and only one sale.

With reference to the decisions in the Second circuit which the United States insist are conclusive, it is true that the fact stated in Eldredge v. Ward, that the principal house and the correspondents stipulated that they did not stand in the relation of principal and agent, was in no way controlling, as was shown in Board of Trade v. Hammond Co., 198 U. S. 424, 25 Sup. Ct. 740, 49 L. Ed. 1111. The Supreme Court in that case found, however (198 U. S. at pages 437, 439, 25 Sup. Ct. 740, 49 L. Ed. 1111), on facts almost identical with those here, that the relation of principal and agent existed between the correspondents and the principal house in such a way that it would seem to prevent the possibility of establishing here any relation which would justify a double tax. The facts here are so simple and controlling, and the conclusions of the law therefrom so clear, that there is no opportunity to be governed by any of the authorities cited.

We leave it for the District Court to determine, on the agreement referred to in the record, whether the plaintiff should recover interest and costs taxed in the court below.

The judgment of the Circuit Court is reversed, and the case is remanded to the District Court for further proceedings in accordance with law and the agreement of the parties; and the plaintiff in error recovers its costs in this court.