DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1913.

---

### R. M. Owen & Company, Appellant, v. Walter E. Johnson et al., Appellees.

1. CORPORATIONS, § 755*—*when service upon a sales agent of nonresident corporation is sufficient.* In an action against a non-resident corporation engaged in the selling of motor cars in this State, service upon a sales agent appointed by a general agent and recognized by the corporation as such agent, *held* sufficient under R. S. c. 110, § 8, J. & A. ¶ 8545.

2. APPEAL AND ERROR, § 1332*—*conclusiveness of default judgment.* On appeal from a decree dismissing a bill to set aside a default judgment and to enjoin its collection, it cannot be urged that there was no legal liability or consideration upon which to base the judgment, where the question was to some extent inquired into when the default was taken and on one of the issues made by the bill and answer the master found the amount of the judgment was due and the court approved the master's finding.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed April 18, 1913. Rehearing denied October 15, 1913. *Certiorari* denied by Supreme Court (making opinion final).

JOHN STAPLETON and CHARLES L. CAPEN, for appellant.

A. M. HESTER and WELTY, STERLING & WHITMORE, for appellees.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

A brief history of the proceedings had in relation to the litigation in question is, that in the early summer of 1908 the appellees, Walter E. Johnston and William Hurt, partners under the firm name and style of Johnston & Hurt, entered into a contract with O. C. Owen, who represented himself to be the general agent of R. M. Owen & Co., a nonresident corporation, for the sale of Reo motor cars, as sole agents for McLean county, Illinois. The condition upon which they were appointed sole agents was, that each of them should buy a car, and they were to receive as compensation twenty per cent. of the list price of the cars sold by them, including their own cars. Johnston & Hurt bought and paid for and received their two cars as per agreement, and commenced a canvass of the county for the sale of cars, and succeeded in closing sales for two or three of such cars.

Shortly after Johnston & Hurt began work under their contract, and after they had closed deals for two or three cars, one W. G. Bell, who had been instructing them under the direction of O. C. Owen, opened up selling Reo cars on his own account in McLean county, and received from O. C. Owen, who was agent for appellant in Illinois, and sold and delivered such cars to citizens of McLean county.

On October 28, 1908, said Johnston & Hurt commenced suit in the McLean Circuit Court against the appellant to recover commissions upon sales of cars made by them individually and by said Bell, and service of summons was had and the following return made thereon: "Executed this writ the 28th day of October, 1908, by reading and delivering a true copy of the same to W. G. Bell, local agent for the within named defendant, R. M. Owen & Co., incorporated, the president, vice-president, treasurer, secretary, superintendent or other officer not found in my county."

The cause was continued until the April term, 1909,

and, defendant failing to plead, default was entered and judgment rendered in the sum of $1,747.05, and costs of suit, on the 2d day of July, 1909. At the November term, 1910, of the said court, appellants entered a limited appearance and filed a motion to vacate the said judgment, on the ground that W. G. Bell was not an agent for appellant at the time of the service upon him and never had been such agent. No question is raised as to the correctness of the demand against them. Again, at the February term, 1911, of the said court, a like motion was made, under a limited appearance, and on the same grounds, and no question was there raised as to the correctness of the demand in this motion. Each of the said motions were denied and exceptions taken as to the denial of the latter motion, and an appeal prayed from the said order of the court,

On April 28, 1911, the bill in chancery before us for consideration was filed by appellants in the McLean Circuit Court, reciting, among other things, the suit by appellees Johnston & Hurt against appellant, the service upon said Bell, who, as they claim was not an agent, the rendition of the judgment against them and that they had no information of the suit until December, 1910; that they do not owe this debt or any part thereof, and pray to have the judgment set aside, vacated and that they be granted a new trial in said cause, and that appellees be restrained and enjoined from proceeding further with a cause pending in Lansing, Michigan, or any other place, or from taking out execution or any other writ on said judgment, and with prayer for general relief.

To this bill answers were filed on behalf of all appellees, averring that appellants were justly indebted to them for commissions under the contract for the sale of automobiles in McLean county, in the sum of the said judgment referred to in the complainant's bill; and that W. G. Bell was the agent of the appellants and was at work for them in McLean county at the

time of the service of the summons; that before the filing of this bill said judgment was assigned by Johnston & Hurt to George H. Marshall, of St. Johns, Michigan, and that he is, and has been since the said assignment, the legal owner of said judgment. Appellees further deny that they are now, or have at any time, been seeking by suit or otherwise, to collect said judgment off of and from the appellants since the date of the said assignment.

Issue being joined, the cause was referred to the master in chancery to take and report the proof, together with his conclusions of both law and fact.

The master reported that he took the testimony of all witnesses presented by the respective parties, attached same to his report, and found that the court had jurisdiction of the subject-matter and that W. G. Bell, the person upon whom service was had in the common law action, was the agent of the appellant; that the amount of the judgment rendered in the common law proceeding was correct.

Objections to the report of the master were duly filed by the appellant, and were overruled, and exceptions entered by appellant to the report of the master were, by the court, overruled and the report approved; and a decree was rendered dismissing the bill for want of equity and dissolving the preliminary injunction; and decreeing further, that the judgment theretofore rendered be of full force and binding effect, and that appellees and their assigns, be entitled to proceed to the collection of the same by process of law and that appellant pay the costs of the proceeding. Exceptions were duly taken and this appeal perfected, thus bringing the record before us for review.

The first question to be considered in determining this cause is the relation that W. G. Bell sustained to the appellant herein at the time of the service of summons in the common law proceeding, here sought to be set aside and the collection of the judgment entered therein enjoined.

There seems to be no question but that W. G. Bell was appointed, September 23, 1908, as the agent for the sale of automobiles, by O. C. Owen, whom it is contended was in charge of the Chicago office of appellant, with power and authority to appoint local agents, define their territory, fix their compensation and supervise their work, and that he, said O. C. Owen, as the agent of appellant, acted under the advice and directions of appellant and its officers, and, from time to time, reported his acts and doings to them, and continued to hold himself out as the general agent of appellant.

If this contention is sustained by the evidence in this case, then the appointment of Mr. Bell, by said O. C. Owen, would constitute Mr. Bell an agent of appellant at the time the said service was had.

The evidence and exhibits in this record are voluminous, and we will not undertake to refer specifically to all or any considerable portion thereof. The record shows that in the spring or early summer of 1908, the said Mr. Bell was working with said O. C. Owen at Chicago, as sales agent and demonstrator of the Reo car, the exclusive sale of which, east of the Rocky mountains, was under the management and control of appellant. The first correspondence between the appellees and appellant relate to the purchase of two cars and the securing of the agency for McLean county, and the following letter was received in reply thereto:

"Dear Sir:—

You state you intend to visit Chicago in the near future with a view to examining one of our machines at that place. Kindly call upon Mr. O. C. Owen, who looks after the trade in central and northern Illinois, for us, and who will be glad to go into the matter in detail with you and make you a proposition on the purchase of the car in which you are interested. If, as you intimate, you are in a position to dispose of some machines in your territory, you can, no doubt, arrange with Mr. Owen to purchase them on terms that will be

very satisfactory and assure you of good profit on the sales made. Our representatives will be glad to work with you in every way.

Yours very truly,
R. M. Owen & Co.
By H. M. Lee.''

Among other correspondence between O. C. Owen and appellant, we quote the following:

"R. M. Owen & Co.,
Lansing, Mich.

Gentlemen :—

We wish to call your attention to the fact R. R. Lash, of Henry, Ill., is selling cars in Lostant township, in LaSalle county. This township belongs to O. T. Watson, of Morris. I realize it is all the same to me who sells the cars, but do not want to have hard feelings between my agents, and I want you to take it up with Mr. Lash at once and tell him to work his own territory.

O. C. Owen.''

To this we find in the record the following reply:

"We have just looked up Lash's contract. It reads Putnam, Tonica and Lostant, in LaSalle county. You will see from this he has a perfect right to sell in these towns.

Yours very truly,
R. M. Owen & Co.''

The following letter also appears in this record:

Nov. 13, 1908.

O. C. Owen,
Chicago, Ill.

"Dear Sir :—

Our records do not show that Hatcher at the present time has, or ever did have, a deposit with us. It may be the books of the New York office, in connection with the Chicago branch, show a balance of $50. Would suggest your writing New York on this subject.

Yours very truly,
R. M. Owen & Co.''

In addition to this, the form of the letter head used by O. C. Owen in his correspondence with appellees had the name of R. M. Owen & Co., imprinted thereon, and many had the words: "O. C. Owen, Manager," also printed on them.

As specifically relating to the agency of W. G. Bell, we quote from a letter upon the letter head of R. M. Owen & Co., dated July 16, 1908, written by O. C. Owen, to appellees, where it is said: "If you think you can work this territory without Mr. Bell we will put Mr. Bell in the territory further south."

In a letter bearing date September 23, 1908, to R. M. Owen & Co., signed O. C. Owen, it is said: "Kindly mark up McLean county to Mr. W. G. Bell, who is going to take care of that county for me the coming year."

In a letter addressed to appellant, signed by O. C. Owen, dated October 5, 1908, it is said: "We are enclosing you names and addresses, together with location of the territory, of all the agents that we have closed up to date;" and in the list appears the following: "W. G. Bell, McLean county."

In a letter signed by appellant, addressed to O. C. Owen, dated December 20, 1908, it is said: "The package he mentions we sent him on the strength of advice received from Bell that he had been appointed as agent in his territory."

The following letter also appears of record:

Dec. 31, 1908.

"Mr. OTTO C. OWEN,
Chicago, Ill.

"DEAR SIR:—

We made a deal at St. Louis that requires a little assistance, and I would like to have you write me at once if you could let Bell go down for three or four days when the sample machines get there, which will be about next Tuesday, and help them demonstrate and teach their men so they can operate the cars. If

I remember correctly Bell is located at Bloomington, and it will not cost us much to have him go down, etc.

R. M. OWEN & Co.''

The following extract from a letter from R. M. Owen & Co. to O. C. Owen appears in the record: ''We are having printed 60,000 catalogues and will be careful how many we supply the agents with on their first order.'' In a letter from O. C. Owen to appellant, we find the following: ''I wish to say that I consider these agents yours as much as mine.'' And in another letter from O. C. Owen to appellant we find this language: ''Just as soon as I return from Decatur I will let you know the result of my visit, which I hope will be satisfactory to us both.''    ·

The following appears in a letter from O. C. Owen to appellant: ''In regard to sending a man to Mt. Sterling, will be very glad to do so. We have the man now working for us whom you spoke about. Hope the letter to Danville will wake up our agent.''    .    ·

In a letter of May 13, 1908, O. C. Owen wrote to appellant asking appellant's advice as to the employment of a certain man to be sales agent in certain territory, to which appellant, in a letter dated May 14, gave advice as to the employment of the salesman and the method or manner of building up trade in the territory.

Under the date of June 16, 1908, O. C. Owen addressed a letter to appellant, in which he said: ''I have got to have some cars or you will not have an agent in Illinois. I have closed up with C. B. Johnston & Co., of Arrowsmith, for McLean county.''

In a letter from appellant to O. C. Owen, dated August 15, 1908, the following appears: ''We have had nothing but complaints from our agents, and when it comes from one of the family it does not help matters.'' In a letter from appellant to O. C. Owen, of October 10, 1908, we find the following: ''We received a list of agents you have closed to date. We will send them supplies of such literature as we have.''

A letter bearing date December 11, 1908, from appellant to O. C. Owen, contains the following language: "I have always figured the Chicago end as being a part of R. M. Owen & Co."

This record discloses that appellant kept a list of all subagents, their post office address and distributed literature to them, in some instances, and in other instances through the Chicago agency; that the agency in Chicago kept an office in which, it is insisted by appellees, appellant's name was painted on the front; that in many letters not herein referred to the same language, or similar language, pertaining to the business, was used as in these we quote from. In many of the letters written to the appellee the letter heads used by O. C. Owen contained the name of R. M. Owen & Co., with the words, "O. C. Owen, Manager." In all payments for cars, as disclosed by this record, the checks were made payable directly to appellant and with appellant's name indorsed on the back by "O. C. Owen, Mgr." All orders for cars were taken on blanks of R. M. Owen & Co., and many of the orders contained the name of W. G. Bell, as salesman.

Under all of the circumstances appearing from this record, would it not be reasonably inferred by persons dealing with O. C. Owen or W. G. Bell, that he or they were acting as the agent or agents of appellant?

Section 8 of chapter 110, R. S. (J. & A. ¶ 8545), entitled "Practice," provides that any "incorporated company may be served with process by leaving a copy thereof with its president" or certain other enumerated officers, "or any agent found in the county."

In Meacham on Agency, par. 728, we find the following rule announced: "If the sub-agent be one whom the agent was expressly or impliedly authorized to appoint, he is to be deemed to be the agent of the principal, and notice to such sub-agent would be notice to the principal as in the case of other agents."

In the case of *Board of Trade of City of Chicago v. Hammond Elevator Co.*, 198 U. S. 424, which was one

where service was obtained upon an alleged agent, in discussing the subject of agency, the Court said: "The question turns upon the character of the agent, whether he is such that the law will imply the power and impute the authority to him, and if he be that kind of an agent, the implication will be made, notwithstanding a denial of authority on the part of the officers of the corporation."

In *Italian-Swiss Agric. Colony v. Pease,* 194 Ill. 98, in discussing the same subject, our Supreme Court said: "If a corporation knowingly and voluntarily permits a person to hold himself out to the world as its agent, said corporation will be bound as principal to those dealing with such person to act upon the faith that such agency exists; and this is true irrespective of whether or not an agency in fact exists."

In the case of *Cadillac Auto. Co. v. Boynton,* 142 Ill. App. 381, the Court reviewed the above authorities and announced the same doctrine.

In *Crowley, Cook & Co. v. Sumner,* 97 Ill. App. 301, the Court used the following language: "The language of the statute (section 8) is broad, and considering the fact that the commercial, manufacturing and transportation business of the country is to-day mainly carried on by corporations that act through agents, it should be liberally construed to affect what was clearly the intention of the legislature to secure. Corporations doing business over wide areas of territory, are practically beyond the jurisdiction of local courts in such territory where the business is done, unless they can be reached by service upon their representatives there found. That a representative for limited purposes may be an agent for purposes of service under the statute, is plainly seen from the fact that not only a general agent may be served, but also any agent may be served."

When it is considered that O. C. Owen advertised himself as general agent or manager for appellant, entered into contracts for the sale of automobiles as

such general agent, upon blanks furnished by appellant, used forms furnished by appellant for sale orders containing appellant's name, received checks made payable to appellant and indorsed appellant's name on the back thereof as manager to the extent of thousands of dollars, consulted and corresponded with appellant as to the appointment of agents, covering a wide territory, can it be reasonably said that he was not acting in the capacity of a representative of appellant?

Mr. Bell was a salesman appointed by O. C. Owen, evidently with the knowledge and consent of the appellant, but certainly with their acquiescence and approval, because the proof shows that the appellant was notified by O. C. Owen of his appointment on the 23d day of September, 1908. The proof also shows that he sold seven or eight cars in McLean county alone and took the orders therefor on blank forms furnished by appellant and on which his name appeared as salesman, and when cars were delivered he took checks payable to the appellant and they were presented to the banks and paid, and evidently deposited to the credit of appellant, as their name was indorsed thereon by O. C. Owen, their manager.

In addition to this, this record shows that on one occasion Mr. Bell made orders upon the appellant for repairs for one of the machines sold by him, and his order was filled and he was recognized as an agent, and such recognition appears in one of the letters referred to and quoted from herein. On another occasion appellant desired that Mr. Bell be sent to St. Louis for a few days to help in making some demonstrations of cars. His name had been furnished to appellant in the list of agents, and that fact is referred to in one of the letters in the record.

Hence we conclude that Mr. Bell was the recognized agent of the appellant in and for the county of McLean at the date service was had upon him, and for

some time before and after that date.  There is a controversy as to whether the appellant had any knowledge of the commencement of the suit until after judgment had been taken.  Both R. M. Owen and O. C. Owen deny any such knowledge, while appellees insist that they had knowledge both through Mr. Bell, their agent, and one of the appellees.  Be that as it may, we fail to see how that could affect their legal standing and rights in this case.  If they were notified in the manner required by our statute, they were in court for all of the purposes of the suit.

It is further contended that there was no legal liability or consideration upon which to base a judgment in the common law suit.

That question was inquired into to some extent when default and judgment was taken in that case. But, aside from that, it was one of the issues made by the bill and answer in the cause now in hearing.  Proof was taken, and the master found that the amount of the judgment rendered in the common law case was due to the appellees from appellant, and the court approved the master's finding.

We have gone sufficiently into the accounts of appellant and appellees, and we concur in the finding of the master and the decree of the chancellor.

For the reason given, the decree of the Circuit Court is affirmed.

*Affirmed.*