JOHN TURNER & others *vs.* UNITED MINERAL LANDS CORPORATION & others.

Suffolk. December 2, 1940. — April 3, 1941.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Corporation*, Foreign. *Jurisdiction*, Foreign corporation. *Equity Jurisdiction*, Suit relating to foreign corporation, Minority stockholders' suit. *Equity Pleading and Practice*, Parties.

A conclusion, that a foreign corporation, which had closed its office in this Commonwealth and had transferred its property to another foreign corporation, was not doing business here on a date when service was purported to have been made upon it under §§ 38, 37 of G. L. (Ter. Ed.) c. 223, was not inconsistent with nor rendered untenable by the facts that at the time of the purported service two small bank accounts stood in the corporation's name in banks here; that there then resided here an assistant secretary and assistant treasurer and three directors, one of whom was treasurer and another was secretary and attorney for the corporation; that none of such officers had exercised any of the functions of his office for nearly a month, although there had been conferences among them and with stockholders respecting the corporation's affairs and the attorney still was defending a petition for a writ of mandamus seeking inspection of corporation books and records and still had some "correspondence of the" corporation in his office.

A corporation is an indispensable party to a minority stockholders' suit brought in its behalf, and, if no service is made upon it, the bill must be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 1, 1930.

Pleas in abatement for lack of jurisdiction due to lack of service upon the defendant corporations were heard by

*Ronan*, J., and by his order there were entered interlocutory decrees and a final decree dismissing the bill. The plaintiffs appealed.

*J. B. Abrams*, (*M. Palais & F. G. Hinckley* with him,) for the plaintiffs.

*D. E. Hall*, (*P. N. Jones & R. D. Gerould* with him,) for the defendants.

QUA, J. The bill in this case is long and complicated. All parties who have submitted briefs describe it as a bill by minority stockholders of the defendant corporations United Mineral Lands Corporation and Premier Paymaster Mines Company to recover for the benefit of these corporations respectively against the individual defendants, who have served as directors of the corporations, for losses suffered by the corporations in consequence of breaches of duty toward the corporations by the defendant directors. We accept this as a sufficient description of the bill for the purposes of this opinion.

Both of the corporations named as defendants are or were Nevada corporations. On behalf of each there has been filed a pleading in the form of a plea in abatement to the jurisdiction, on the ground that when this suit was brought the corporation had no place of business within this Commonwealth and was doing no business here, and that the court had no jurisdiction of the case. Several individual defendants also pleaded in abatement on the ground that the court had no jurisdiction over the corporations and that the corporations were absolutely indispensable parties to a suit of this nature, so that without them the suit could not proceed at all. The cause was sent to a master to find the facts solely on the question of jurisdiction, and has come to the full court on the plaintiffs' appeals from interlocutory decrees denying their motion to recommit, confirming the master's report, and sustaining the pleas in abatement, and from a final decree dismissing the bill.

According to the return of the deputy sheriff service was made upon each of the corporations by delivery in hand to an officer in charge of its business on July 7, 1930, and

again on July 8, 1930.  Neither corporation ever appointed the commissioner of corporations and taxation its attorney to receive service of process under G. L. (Ter. Ed.) c. 181, § 3, and no service appears to have been made upon the commissioner under § 3A.  Whether such service would have been good under the circumstances of this case hereinafter appearing is not before us.  Service was made under G. L. (Ter. Ed.) c. 223, § 38.  Service may be made under that section only when at the time of service the corporation "has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in or soliciting business in the commonwealth."  *Reynolds* v. *Missouri, Kansas & Texas Railway,* 224 Mass. 379, 384; affirmed *sub nomine Missouri, Kansas & Texas Railway* v. *Reynolds,* 255 U. S. 565.  *Conley* v. *Mathieson Alkali Works,* 190 U. S. 406.  Compare *Mutual Reserve Fund Life Association* v. *Phelps,* 190 U. S. 147.  See *Atlantic National Bank of Boston* v. *Hupp Motor Car Corp.* 298 Mass. 200, and cases cited.  Whether "soliciting" alone would satisfy the Federal decisions need not be considered in this case, as there is an entire absence of proof of any soliciting as distinct from engaging in business.  The decisive question in the case is whether either corporation was in fact actually doing business in this Commonwealth on the dates of service.

As to the so called defendant Premier Paymaster Mines Company there is no room for serious controversy.  The master finds that this corporation was merged with United Mineral Lands Corporation under the laws of Nevada in 1927 and had no separate existence thereafter; that after the consolidation there remained only one corporation, which bore the name United Mineral Lands Corporation; and that Premier Paymaster Mines Company never afterwards took or purported to take any action in Massachusetts or elsewhere.

The result of these appeals must therefore depend upon the status with respect to doing business in this Commonwealth of United Mineral Lands Corporation on July 7 and 8, 1930.  This corporation had been chartered as a

mining corporation. It did not, however, operate any mines. It owned all of the stock of a Canadian corporation which in turn owned and operated a mine in Ontario. The business of United Mineral Lands Corporation was the financing of this subsidiary and the raising of funds for that purpose by sales of its own stock, by assessments upon its stock, and by borrowing. It had undoubtedly carried on this business in this Commonwealth until some time in March, 1930. It had had an office in Boston and had received and paid out large sums of money here. The real question is whether this corporation had wholly ceased to do business in Massachusetts before July 7.

The master made general findings that by June 11, 1930, the corporation had ceased to do in Massachusetts the business in which it had been engaged, and that "so far as it is a question of fact" the corporation "was not doing business in Massachusetts, nor was it engaged in or soliciting business in Massachusetts on July 7, 1930, or July 8, 1930." These general findings are not stated to have been merely inferences from subsidiary findings. So far as appears they may have rested, in part at least, directly upon evidence heard by the master and not reported. We are bound by these findings unless other specific findings of the master are such that these general findings cannot stand with the specific findings and are thus shown to be erroneous in law. *MacLeod* v. *Davis,* 290 Mass. 335. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 435.

The subsidiary findings out of which the plaintiffs seek to demonstrate that the master's ultimate conclusion is erroneous in law are in substance these: On February 6, 1930, a circular letter over the name of the treasurer was sent to the stockholders, reciting that a previous plan for a reorganization had been abandoned; that the corporation was without sufficient funds to finance development and mining operations; and that the directors had voted that a special meeting of the stockholders be held at Reno, Nevada, on February 25, 1930, for the purpose of voting upon the transfer of all the corporation's property and assets to a new corporation to be organized in Ontario. At

the meeting at Reno on February 25 the stockholders voted
to transfer all the assets to a new Ontario corporation,
which was to assume all the liabilities, the stockholders to
exchange their shares for shares in the new corporation.
Under date of March 6 a circular letter signed "United
Mineral Lands Corporation by Dexter B. Pattison, secre-
tary" was sent to the stockholders of that corporation.  It
stated that the stockholders had voted to ratify the propo-
sition which had been outlined in the earlier letter, referred
to various details involved in the plan, and stated that a
certain trust company in Toronto would handle the ex-
change of shares.  On March 8, at a meeting of the directors
in Boston, three of the defendants resigned as directors,
and the defendant Davis resigned as treasurer and never
acted as such again.  Thereafter the defendants Pattison,
Henderson and Barry were the directors, and Henderson
was treasurer.  All lived in Boston.  Pattison was a lawyer
and had been the corporation's attorney.  The president
had moved his residence out of the Commonwealth.  Later
in March, in consequence of instructions from Toronto,
the treasurer, Henderson, packed up and shipped to Ontario
all the books and papers of the corporation, including cor-
respondence, files and records.  Nothing but furniture was
left in the office of the corporation.  Henderson sold the
furniture a few days later, and by April 1, there was no
personal property of any sort left in the office.  The tele-
phone service was discontinued, and the office was closed.
Thereafter the corporation maintained no office in Massa-
chusetts.  When the office was closed the corporation had
a checking account at the Exchange Trust Company in
Boston amounting to $530.85.  Although Henderson as
treasurer was authorized to sign checks with the counter
signature of an assistant treasurer, who had previously
been in the Boston office, no checks were so drawn.  By
July 1 the account had been drawn down to $28.14 through
checks drawn by the "manager of the mines in Ontario,"
who also had authority to draw them.  At the time of clos-
ing the office there was a further balance of $5 standing to
the credit of the corporation in the Highland Trust Com-

pany of Somerville, and the corporation was indebted to the trust company on notes for loans in the sum of $20,000 and interest. The $5 balance was never withdrawn, but the Canadian corporation assumed the $20,000 indebtedness and in 1933 extinguished it by a compromise agreement with the commissioner of banks, who had taken over the trust company in 1931. On April 26, 1930, a meeting of the directors was held at Pattison's office in Boston at which only Pattison and Henderson were present. Various votes were adopted by them incident to the transfer to the Canadian corporation. On June 11 another meeting of the directors was held at Pattison's office at which Pattison stated that he had executed instruments of transfer of the property to the Canadian corporation and at which he was authorized to send a letter to the Canadian corporation relative to a proposed circular to be sent by the latter to the stockholders of United Mineral Lands Corporation. Such a circular was sent by the Canadian corporation on June 16, stating that it had accepted the property and obligations of United Mineral Lands Corporation and containing information as to the method of exchanging stock. By June 11 United Mineral Lands Corporation had transferred all its assets to the Canadian corporation, the latter had assumed all of the former's obligations, and shares in the new corporation were available for exchange at the bank in Toronto. United Mineral Lands Corporation then owned no property in Massachusetts or elsewhere, except the two bank deposits.

On the findings of the master the only points of contact which United Mineral Lands Corporation had with Massachusetts after June 11 were the following: (1) Certain officers remained here. Henderson was treasurer. Pattison was secretary. Henderson, Pattison and Barry were directors. All these lived here. A Miss Stimson, who was assistant secretary and assistant treasurer, also lived here. Pattison resigned as director and secretary, and Henderson resigned as director, at a meeting in Toronto on July 17. At the time of the service on July 7 and 8 Henderson retained the office of treasurer and Miss Stimson was still

assistant secretary and assistant treasurer.   The master found that if either Henderson or Miss Stimson had been called upon to perform any act as the holders of their respective offices he or she would have performed it.   But he found that neither did perform any such act.   There is no finding that any of the officers resident here exercised any of the functions of their offices here after June 11. (2) On June 13 Pattison made an affidavit for use in some legal proceedings in Canada, but so far as appears this was nothing more than any witness might have done.   (3) Some "correspondence of the company" was in a file in Pattison's law office until July 16.   (4) Up to July 16 some stockholders of the corporation called at Pattison's own office and talked either with him or with Henderson "with reference to the exchange of their stock for stock in the new corporation."   From time to time Henderson and Pattison discussed "the matter of how the stockholders were going through with their exchange of stock."   It does not appear that those talks were in the course of the performance by Pattison or Henderson of any official duty in the corporation's behalf.   (5) When this bill in equity was filed Pattison as attorney for the corporation was still defending a petition for a writ of mandamus brought in this court by these plaintiffs in 1929, whereby they sought to inspect the books and records of the corporation.   (6) The corporation had two bank deposits here of trifling sums and owed one of the banks $20,000.

We discover nothing in these findings of particular facts which is inconsistent with the master's general conclusion that United Mineral Lands Corporation was not doing or soliciting business in Massachusetts on July 7 or July 8, 1930, or which as matter of law shows that finding to be wrong.   Neither the residence of officers within the State, nor their physical presence within its boundaries is doing business.   *St. Clair* v. *Cox*, 106 U. S. 350.   *Conley* v. *Mathieson Alkali Works*, 190 U. S. 406, 411.   *Riverside & Dan River Cotton Mills* v. *Menefee*, 237 U. S. 189.   Defending an isolated lawsuit is not doing business within the State. *Caledonian Coal Co.* v. *Baker*, 196 U. S. 432, 444, 445.   Main-

taining a bank deposit is not in itself alone doing business. *Bank of America* v. *Whitney Central National Bank,* 261 U. S. 171. Casual talk by Pattison and Henderson with stockholders or with each other would not constitute the doing of business by the corporation. The items enumerated above, whether taken separately or together, fail to show that United Mineral Lands Corporation was doing business in this Commonwealth at the time of the attempted service upon it. The general finding of the master must stand. See *International Harvester Co. of America* v. *Kentucky,* 234 U. S. 579; *Philadelphia & Reading Railway* v. *McKibbin,* 243 U. S. 264; *People's Tobacco Co. Ltd.* v. *American Tobacco Co.* 246 U. S. 79; *Rosenberg Bros. & Co. Inc.* v. *Curtis Brown Co.* 260 U. S. 516; *Hutchinson* v. *Chase & Gilbert, Inc.* 45 Fed. (2d) 139. The case at bar is distinguishable from *Marconi Wireless Telegraph Co. of America* v. *Commonwealth,* 218 Mass. 558, 576–577; *Reynolds* v. *Missouri, Kansas & Texas Railway,* 224 Mass. 379; *Plibrico Jointless Firebrick Co.* v. *Waltham Bleachery & Dye Works,* 274 Mass. 281; *Browning-Drake Corp.* v. *AmerTran Sales Co.* 274 Mass. 545; *Trojan Engineering Corp.* v. *Green Mountain Power Corp.* 293 Mass. 377; *Atlantic National Bank of Boston* v. *Hupp Motor Car Corp.* 298 Mass. 200, and *Stein* v. *Canadian Pacific Steamships Ltd.* 298 Mass. 479.

There was no error in refusing to recommit or in confirming the master's report. From what has been said it appears that there was no error in sustaining the plea of United Mineral Lands Corporation.

It follows also that there was no error in sustaining the pleas of the other defendants or in the final decree dismissing the bill. The corporation in behalf of which a stockholders' bill is brought is an indispensable party to the suit. Justice requires that the corporation itself be bound by the result of such a suit and be not left free to bring its own suit later against the same defendants for the same alleged wrongs. *Davenport* v. *Dows,* 18 Wall. 626. *Baltimore & Ohio Railroad* v. *Parkersburg,* 268 U. S. 35, 38. *Eldred* v. *American Palace-Car Co. of New Jersey,* 105 Fed. 457. *Hyams* v. *Old Dominion Co.* 209 Fed. 808. *Watts* v. *Vander-*

*bilt,* 45 Fed. (2d) 968. *Philipbar* v. *Derby,* 85 Fed. (2d) 27.
*Dean* v. *Kellogg,* 294 Mich. 200. See *Freeman* v. *Bean,* 243
App. Div. (N. Y.) 503, affirmed 266 N. Y. 657. The trend
of our own decisions is in the same direction. *Lyman* v. *Bon-
ney,* 101 Mass. 562, 563. *Clark* v. *Knowles,* 187 Mass. 35.
*Converse* v. *United Shoe Machinery Co.* 209 Mass. 539, 541.
*Corey* v. *Independent Ice Co.* 226 Mass. 391, 393. *Hayden*
v. *Perfection Cooler Co.* 227 Mass. 589, 591.[1] Whenever
the lack of indispensable parties has become manifest the
court may dismiss the bill of its own motion. *First Na-
tional Bank of Northampton* v. *Crafts,* 145 Mass. 444, 447.
*Barney* v. *Baltimore,* 6 Wall. 280. *Gregory* v. *Stetson,* 133
U. S. 579, 586. See *Westall* v. *Wood,* 212 Mass. 540, 545;
*Shirk* v. *Walker,* 298 Mass. 251, 262, 263.

Nothing in this opinion is at variance with *Wineburgh* v.
*United States Steam & Street Railway Advertising Co.* 173
Mass. 60, *Richardson* v. *Clinton Wall Trunk Manuf. Co.*
181 Mass. 580, or *Raynes* v. *Sharp,* 238 Mass. 20. In each
of those cases the corporation was fully before the court as
a party to the suit.

> *Interlocutory decrees affirmed.*
> *Final decree affirmed with costs.*

---

[1] The difficulty that sometimes arises in stockholders' suits in finding any
single jurisdiction in which both the corporation and its culpable officers can
be sued is discussed and possible remedies are suggested by Norman Winer
in 22 Virginia Law Rev. 153.