## COAKLEY v. FRANK A. MUNSEY CO.

### No. 2253.

District Court, D. Massachusetts.

May 18, 1943.

John J. Tobin and W. Minot Hurd, both of Boston, Mass., for plaintiff.

Stuart Macmillan, of Boston, Mass. (Haussermann, Davison & Shattuck, of Boston, Mass., of counsel), for defendant.

WYZANSKI, District Judge.

1. This case is here on defendant's motion to quash two summons to answer plaintiff's complaint.

2. Plaintiff is and always has been a resident and citizen of Massachusetts. Defendant is a New York business corporation which until November, 1942, published "True Crime Mysteries" and other magazines, but which is now in process of voluntary liquidation.

3. January 11, 1943, plaintiff procured in the Massachusetts Superior Court for Suffolk County a writ for an action of tort. Pursuant to the writ, deputy sheriffs on February 9, 1943, served summons to answer upon the Commissioner of Corporations and Taxation of Massachusetts and upon Tilton S. Bell. Thereafter, in accordance with the Massachusetts practice, on March 1, 1943, plaintiff entered the action and filed his declaration. The gist of the wrong alleged was that defendant published throughout the several states of the United States and in the Commonwealth of Massachusetts the February 21, 1942, issue of "True Crime Mysteries" containing a libel damaging plaintiff.

4. Prior to November 1, 1942, defendant's business was the publishing of a group of magazines known as the Red Star Group and including "True Crime Mysteries" otherwise known as "Flynn's Detective Fiction", "Argosy", "All Story" and "Railroad Stories." Defendant was organized under the laws of, and maintained its principal business and editorial offices in, New York. It arranged to have its publications printed in Chicago. It arranged for the distribution of its publications by an affiliated corporation, Red Star News Company, also organized under the laws of New York. Red Star did not itself distribute in Massachusetts, make contracts here, or do other business here. The circulation of defendant's magazines in Massachusetts was achieved by contracts of sale between Red Star and Greater Boston Distributors, Inc., an entirely independent enterprise dealing in all sorts of periodicals, journals and magazines. In accordance with these contracts, Red Star arranged to have defendant's magazines bundled at the Chicago printing plant and shipped to Greater Boston as purchaser; Greater Boston made physical distribution in Massachusetts to its customers, retail outlets, news stands, and individual purchasers; Greater Boston made payments for its purchases from Red Star by periodical payments of lump sums covering all copies delivered less allowances for unsold copies returned; and Red Star never directly or through any agent solicited or made sales in Massachusetts.

5. Neither defendant nor Red Star had a bank account in Massachusetts nor made collections here. Neither registered with, or secured a license from any Massachusetts authority, or appointed as its agent for service of process any individual resident in, or any official of, the Commonwealth of, Massachusetts.

6. For 25 years prior to February 1, 1942, defendant and its related enterprises employed as an advertising solicitor, Tilton S. Bell. Bell was not an officer, director or shareholder of defendant. His duties were to visit prospective advertisers in the New England territory to solicit advertising. He had nothing to do with the distribution or sale of or subscriptions to defendant's magazines. He had no authority to, and did not, make advertising contracts binding defendant; but merely transmitted to defendant in New York for acceptance or rejection such offers for advertising space as he received. These offers were generally made not on the defendant's forms, but on the forms of advertisers or advertising agencies. If defendant's New York office accepted an offer, it then rendered bills direct to the advertiser; and Bell had nothing to do with their collection except that on two occasions over a period of 25 years he induced dilatory advertisers to send overdue checks to New York. Bell was paid from defendant's New York office a fixed salary which did not vary with the business he secured. He occasionally was presented with complaints by defendant's New England customers, but he, without adjusting them, merely relayed them to New York. During his employment, Bell had a small office in the Old South Building, Washington Street, Boston. He initially paid, but was reimbursed by check from defendant's New York office, for the rent and office expenses such as telephone, light and postage. Defendant employed for Bell's use a stenographer until February 1, 1942, and paid her salary from New York.

7. During the time Bell was employed and until about January 1, 1943, defendant caused the building directory at the Old South Building and the Boston telephone directory each to list defendant as located in Bell's office.

8. About November 1, 1942, defendant sold its interest in its various publications and ceased any business except liquidation

of its assets. After February 1, 1942, defendant had no employees in Massachusetts. Bell was not employed by defendant after February 1, 1942.

### Conclusions of Law.

1. On February 9, 1943, Bell was not an agent or employee of defendant.

■ 2. Moreover, since defendant was not soliciting or engaged in any other activity in Massachusetts on February 9, 1943, service of process upon Bell was not authorized by the terms of Mass. G.L. (Ter. Ed.) c. 223, § 38, as amended St.1939, c. 451, § 61. Turner v. United Mineral Lands Corp., 308 Mass. 531, 33 N.E.2d 282.

3. It follows that the service upon Bell did not constitute a valid service upon defendant.

4. There remains, however, the question whether service upon the Commissioner was a valid service upon defendant. The critical statutory language is in Massachusetts General Laws (Ter.Ed.) c. 181, § 3A which provides that a foreign "corporation which does business in this commonwealth * * * shall * * * be deemed and held, *in relation to any cause of action* or proceeding *arising out of such business,* to have appointed the commissioner * * * to be its * * * attorney, and any process in any such action or proceeding against it served upon the commissioner * * * shall be of the same legal force and validity as if served."

5. I do not need to decide (a) whether the vague language of Mass. G.L. (Ter. Ed.) c. 181, § 3A, like the express terms of Mass. G.L. (Ter.Ed.) c. 223, § 38, purports to cover a corporation that merely solicits business in the Commonwealth, or (b) whether Mass. G.L. (Ter.Ed.) c. 181, § 3A purports to continue the authority of the Commissioner to receive process on behalf of such corporation after it has ceased to do business in the Commonwealth [cf. Turner v. United Mineral Lands Corp., 308 Mass. 531, 533, lines 5–8, 33 N.E.2d 282, 283] or (c) whether if the Massachusetts statute purported to go so far it would be in violation of the "due process" or "commerce" clauses of the United States Constitution. Article 1, § 8, cl. 3; Amend. 14. Cf. Canadian Pacific R. Co. v. Sullivan, 1 Cir., 126 F.2d 433. But see Bellar v. Lake Erie Chemical Co., D.C.Mass., 41 F.Supp. 676.

■ 6. For present purposes it is quite sufficient to observe that Mass. G.L. (Ter. Ed.) c. 181, § 3A is limited to service "in relation to any cause of action or proceeding arising out of * * * business" in Massachusetts [Trojan Engineering Corp. v. Green Mt. Power Corp., 293 Mass., 377, 382, 200 N.E. 117] and to consider the narrow issue whether the present cause of action so arose.

■ 7. While it may be true that, under principles of the law of torts and the law of conflicts of law, the injury of which plaintiff complains occurred at least in part in Massachusetts, it is transparent that the cause of action did not arise out of defendant's Massachusetts business. It arose out of defendant's activities such as its editorial work, its printing and its contracts for distribution of periodicals, all of which occurred outside of Massachusetts. In this state defendant did nothing but solicit and receive offers for advertising contracts. Since the present cause of action has nothing whatsoever to do with such advertising business, the service of process upon the Commissioner was not authorized by the terms of Mass. G.L. (Ter.Ed.) c. 181, § 3A.

■ 8. The period for effective service having elapsed, it is ordered that plaintiff's complaint be dismissed with costs.