**WSAZ, Inc., Appellant,**

v.

**Gerald LYONS, Appellee.**

**WSAZ, Inc., Appellant,**

v.

**Calvin GEARHART, Appellee.**

Nos. 13261, 13262.

United States Court of Appeals
Sixth Circuit.

April 7, 1958.

Selden S. McNeer, Luther E. Woods, Jr., Huntington, W. Va. (Campbell, McNeer & Woods, Huntington, W. Va., on the brief), for appellant.

W. H. Dysard, Ashland, Ky. (E. Poe Harris, Ashland, Ky., on the brief), for appellees.

Before SIMONS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of two cases presenting identical questions of law based on practically identical facts. They were tried together and are consolidated for hearing here. The questions presented are (1) whether broadcasting by defendant,[1] a foreign corporation, from its television station located outside Kentucky but sent into and delivered in Kentucky by defendant in accordance with and in fulfillment of contracts for advertising within Kentucky constitutes doing business in Kentucky; and if so, (2) whether the particular tort complained of by plaintiffs, a libel, was so connected with doing business by defendant within Kentucky that service may be had upon and jurisdiction secured over defendant, a foreign corporation not qualified to do business in Kentucky, through service on the Secretary of State of Kentucky under the provisions of KRS Sections 271.385 and 271.610. The

pertinent portion of these statutes reads as follows:

Section 271.385(2):

"Every foreign corporation, except foreign insurance companies, carrying on business in this state, shall at all times have an office in this state and an authorized agent in this state upon whom process can be served."

Section 271.610(2):

"Any foreign corporation that does business in this state without having complied with the provisions of KRS 271.385 as to designation of process agent shall, by such doing of business, be deemed to have made the Secretary of State its agent for the service of process in any civil action instituted in the courts of this state against such corporation involving a cause of action arising out of or connected with the doing of business by such corporation in this state. The plaintiff in such an action shall set forth in his petition the post office address of the home office of the corporation."

Defendant contends that the District Court secured no jurisdiction. The question was raised by motion to vacate and quash summons and dismiss the action, which was overruled. The verdicts were returned in favor of each plaintiff for $5,000. After jury verdicts motion to dismiss the case for lack of jurisdiction was renewed and motion was also made for an order setting aside the verdicts and entering judgment in favor of defendant or, in the alternative, for an order setting aside the verdicts and granting a new trial. These motions were overruled and judgment was entered on the verdicts.

The case arises out of the following facts, in general developed in answer to interrogatories filed by plaintiffs and, under order of the court, answered by

---

1. The parties will be designated as in the court below.

As defendant relies solely upon the jurisdictional question, we do not discuss the merits of the case which are set forth in the District Court's opinion Gearhart v. WSAZ, Inc., 150 F.Supp. 98.

defendant, and from affidavits filed in support of and opposing the motion to dismiss:

W.SAZ, Inc., operates a radio and television broadcasting station in Huntington, W. Va. The activities of the radio station are not here involved. The primary coverage of the television station for daytime operation includes areas of West Virginia and Ohio and five counties in Kentucky, including Boyd County. The alleged libel took place in Boyd County, one of the counties to which defendant gives Grade A service, the superior of the two types of service specified by the Federal Communications Commission. Grade A service is so specified by the FCC that "a quality acceptable to the median observer is expected to be available for at least 90% of the time at the best 70% of receiver locations at the outer limit of this service."

Defendant contracts for advertising on behalf of persons and business firms located in Kentucky. It asserts that all contracts for such advertising are sent to Huntington, West Virginia, for acceptance or rejection.

Defendant's total advertising sales from April 1, 1954, to March 31, 1955, amounted to $1,976,049.27. Of this amount 3.6%, namely, $71,310.39, was derived from advertising sold to persons and firms located in Kentucky. 2.4% of the Kentucky advertising contracts were made by defendant with Kentucky purchasers but were negotiated, defendant asserts in its answer to interrogatories, by advertising agents located outside of Kentucky. Advertising contracts were also made directly with customers located in Kentucky. It is stated that in general these were negotiated by telephone or personal interview in West Virginia. All sales of advertising made by defendant were in consideration of its agreement to broadcast and telecast sound and picture signals from its transmitters under the specifications of the Federal Communications Commission. Defendant's television schedules are published without charge in seven newspapers in Kentucky, including Boyd County and it buys a nominal amount of advertising in Kentucky newspapers.

Boyd County, Kentucky, the situs of the alleged libel, which contains the cities of Ashland and Catlettsburg, the county seat, is across the Ohio River from West Virginia. Huntington, West Virginia, defendant's principal place of business, is about 15 miles from the city of Catlettsburg. Defendant's telecasts in Boyd County, Kentucky, reach some several hundred thousand people.

Defendant operates its television station some eleven miles northeast of Huntington, West Virginia, where its facilities and offices are situated. None of its employees or agents reside in Kentucky and it has no office there. Occasionally its employees gather material for news broadcasts in Kentucky, but it has neither qualified to do business in that state nor designated any agent upon whom process can be served therein.

■ Plaintiffs instituted in the Circuit Court of Boyd County, Kentucky, individual actions claiming damages for the alleged libel published by defendant's telecasts in Kentucky and served process upon the Secretary of State of Kentucky. The action was removed to the Federal Court on the ground of diversity of citizenship. As rightly held by the District Court, it has jurisdiction only if the Boyd County Circuit Court in which the cases were originally filed had jurisdiction. Lambert Run Coal Co. v. Baltimore & O. R. Co., 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671. This question in turn depends upon whether the service upon the Secretary of State of Kentucky invested the Kentucky court with jurisdiction.

Defendant does not contest the fact that television and radio broadcasts are interstate commerce. Fisher's Blend Station, Inc., v. Tax Commission, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956.

■ However, defendant urges that if it is held liable here it is liable in any state of the union to which the television waves coming from its West Virginia facilities are transmitted. It also con-

tends that, unless broadcasting which is received in any state of the union constitutes doing business in that state, defendant was not doing business in Kentucky. These are questions with interesting legal ramifications but they are not decisive here. As set forth in International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 583, 34 S.Ct. 944, 58 L.Ed. 1479, whether the essential requirement of doing business by a foreign corporation within the state of the forum exists is to be decided upon the facts of the particular case. The facts here consist not only of certain general conditions and situations with reference to telecasting, emphasized by defendant, but they include its own admissions that its usual business was broadcasting, that newscasts were part of its usual business and that the alleged libels were published as newscasts.

 Defendant in its answer No. 3 to interrogatories replied in the affirmative to the following question:

> "3. Is the usual business of WSAZ, Inc., that of telecasting and broadcasting television and radio waves or signals from its towers in Huntington to receiving sets owned by the public in its listening areas?"

It also stated in its answer to Interrogatory 2 that "The primary coverage area of the station * * * for daytime operation includes essentially all or portions of the following counties:" It then named five counties in Kentucky, including Boyd County. It further stated that its nighttime contour covers "a part of Boyd County in Kentucky." In the affidavit filed in support of defendant's motion to vacate and quash summons defendant's vice president and general manager stated "said corporation regularly broadcasts programs generally known as news broadcasts over both its radio and television stations. * * * *" It is thus established that Boyd County, Kentucky, is one of defendant's "listening areas" and that as part of its usual business of telecasting to the receiving sets owned by the public in its listening

areas defendant puts out regular news broadcasts. These facts seem to require the deduction that defendant does business in Boyd County, Kentucky, for it is also undisputed that the activation of the broadcast in West Virginia continued into Kentucky and was the act of defendant itself.

Defendant, relying upon decisions in libel cases where the alleged libel was published in newspapers printed in a foreign state but distributed in the state of the forum and holding that such distribution is not doing business in the state of the forum, contends that the decision herein must be reversed. It urges that in these newspaper cases the mere soliciting and obtaining of orders within the state of the forum by an agent of the foreign corporation for goods to be shipped into a state to purchasers does not amount to doing business within that state. Robbins v. Benjamin Air Rifle Co., 5 Cir., 209 F.2d 173; Lauricella v. Evening News Publishing Co., D.C., 15 F.Supp. 671. It also urges that the gathering of news in the state of the forum does not, as against a foreign corporation served with process as herein, constitute doing business in that state. Neely v. Philadelphia Inquirer Co., 61 App.D.C. 334, 62 F.2d 873; Layne v. Tribune Company, 63 App.D.C. 213, 71 F.2d 223. The fact that contracts for subscriptions were not consummated within the state of the forum was held in Cannon v. Time, Inc., 4 Cir., 115 F.2d 423, a newspaper case, to be an important factor in the decision that the newspaper, a resident of Chicago, was not doing business within Virginia.

A later decision, Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 515, 146 A.L.R. 926, indicates, however, that the feature of execution of the contracts in the state of residence is not controlling, declaring "the fundamental principle underlying the 'doing business' concept seems to be the maintenance within the jurisdiction of a regular, continuous course of business activities, whether or not this includes the final stage of contracting." Cf. Interna-

tional Harvester Co. of America v. Commonwealth of Kentucky, supra. In this case there was a continuous shipment of machines into the state of the forum whch corresponded with the continuous transmission herein of defendant's broadcasts into Kentucky. Cf. Board of Trade of City of Chicago v. Hammond Elevator Company, 198 U.S. 424, 441, 442, 25 S.Ct. 740, 49 L.Ed. 1111.

In view of the affidavits filed on the original motion to dismiss, executed by businessmen and concerns of Ashland, Kentucky, in 1955, it may be questioned whether the solicitation by defendant's employees in Kentucky was as sporadic as it claims. For the period involved an affidavit executed by two business associates of Ashland states that they were solicited on several occasions by defendant's agent in Ashland, Kentucky. An affidavit by a general manager of a motor company in Ashland, Kentucky, says that on numerous occasions he was solicited in Ashland by an employee of WSAZ for advertising. One affiant appends a check for $500 paid as his share in a certain advertising broadcast by defendant during this period. Other affidavits executed by residents of Kentucky support these statements. Under the circumstances we cannot conclude that the District Court's finding of facts embodied in its opinion was clearly erroneous, namely [150 F.Supp. 102]:

> "The record discloses that over a considerable period of time the defendant sought out and contracted with various merchants and business people in Kentucky for advertising over its stations. It entered into written contracts. It had representatives solicit advertising in person and engaged business people in written contracts extending over weeks and months."

█ The words "doing business" are not technical. They are ordinary words to be construed according to their ordinary meaning. Defendant's activities within the State of Kentucky come within the dictionary definition. "Business" is defined by Webster as any particular occupation or employment habitually engaged in, especially for livelihood or gain. Another applicable definition is "Mercantile transactions; buying and selling. * * *" Webster's New International Dictionary, Second Edition.

Defendant does not contend that it does not sell its service and that it gets no gain therefrom. Its actual income is from advertising. In accordance with its contracts it advertises goods, merchandise, services, etc., for sale in Boyd County, Kentucky, where it reaches part of its listening public. When it starts the telecast defendant is doing its "usual business" as defined in Interrogatory 3, but it contends that the completion of the business in Kentucky is not a part of its business. Thus in effect defendant contends that its activities in telecasting have no effect beyond West Virginia, although its telecasts were delivered by defendant and received in the listening areas such as Boyd County, which contracted expressly for them. A substantial number of defendant's customers desired to reach the buying area of Boyd County and bought defendant's advertising service with that precise purpose. The advertising contracts in question, whether originating in Kentucky or not, were performed in that state for a substantial money consideration derived from residents of that state.

We see a vital distinction between the instant case and the newspaper cases relied on by defendant. Of the numerous decisions which it cites Cannon v. Time, Inc., supra; Street & Smith Publications, Inc., v. Spikes, 5 Cir., 120 F.2d 895; and Schmidt v. Esquire, Inc., 7 Cir., 210 F.2d 908, are typical. In each of these cases the publisher was a foreign corporation, but the publication circulated widely through the state in which jurisdiction over the publisher was sought. In Cannon v. Time, Inc., supra, the question involved was the validity of process to be served upon Time, Inc., a resident of Chicago, Ill., publisher of Time magazine. The distribution of Time magazine was handled by The American News Company of New York

State, which arranged for delivery of the magazines to the carrier and for their independent sale at newsstands within the State of Virginia. The business within Virginia was done by the newsstands and agencies for themselves as independent contractors. The court in an opinion by Judge Parker held that business was not done by Time, Inc., within Virginia.

In the instant case defendant itself transmitted its advertising over the air and delivered it in Kentucky. No independent contractor intervened. We do not agree with the contention that if the telecast went on the air waves defendant could not control the out-of-state operation. As it signed on a telecast it could have signed it off. The court takes judicial notice that defendant could have cut off from the air the particular broadcasts alleged and found by the jury to constitute libel in both cases. The fact that the amount of business solicited in Kentucky was only 1.03% of the total advertising revenue for the year from April 1, 1954, to March 31, 1955, is immaterial. The total advertising income derived from Kentucky for the period involved was over $71,000. This is a substantial amount and the record shows that it was secured by a regular and sustained course of business. As declared in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 159, 90 L.Ed. 95:

> "The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has

no contacts, ties, or relations. Cf. Pennoyer v. Neff, supra [95 U.S. 714, 24 L.Ed. 565]; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573.

> "But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

Here the undisputed circumstances above set forth compel the conclusion that defendant carried on a regular and continuous course of business activity in Kentucky, for its usual broadcast, started by defendant in West Virginia, was regularly carried over into Kentucky by defendant as expressly contracted.

Defendant through its telecasting had substantial ties, contracts and relations with the Commonwealth of Kentucky and its activities within that state created obligations therein. It follows that within the doctrine of International Shoe Co. v. State of Washington, supra, defendant is doing business within the Commonwealth of Kentucky.

Defendant also vigorously contends that the news telecasts alleged to constitute the libel have no connection with the business done. On this point defendant cites decisions construing a statutory provision more narrow than that of KRS Section 271.610. Thus the Massachusetts statute construed in Coakley v. Frank A. Munsey Co., D.C., 50 F.Supp. 83, and in Nichols v. Cowles Magazines, Inc., D.C., 103 F.Supp. 864, required that the cause of action asserted arise out of business done in Massachusetts. The Kentucky statute is broader. It covers, in addition to causes of action "arising out of" the doing of business by a foreign corporation in Kentucky, causes of action "connected" with the doing

**248**

of business by such corporation in Kentucky. All that is necessary here is that the cause of action asserted shall be "connected" with the business done. Defendant asserts that the alleged libel has no connection with its business done in Kentucky. But in view of its admission that its usual business was the business of telecasting and that this included news programs, and in view of the undisputed fact that the alleged libel was part of news programs regularly broadcast by defendant, this contention has no merit.

█ The question of due process would seem to be settled by the case of McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, as well as by International Shoe Co. v. State of Washington, supra. While defendant was not present in the territory of the forum, it certainly had substantial contacts with it. It sought and executed contracts for the sale of advertising service to be performed and actually performed by its own act within the territory of the forum. We conclude that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, supra.

The judgment of the District Court is affirmed.