**Paul A. GUAY, Plaintiff,**

v.

**OZARK AIRLINES, INC., Defendant.**

**Civ. A. No. 76–3218–MA.**

United States District Court,
D. Massachusetts.

May 17, 1978.

As Amended June 7, 1978.

Edward F. Haber, Boston, Mass., for plaintiff.

Linda F. Smith, Thomas J. Sartory, Hale & Dorr, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiff, Paul A. Guay, commenced this action in two counts on August 30, 1976. Count I alleges the breach of an implied employment contract that the plaintiff would not be terminated except for a poor job performance and after reasonable warnings and notice. The plaintiff contends he was terminated solely due to his hair length and not for poor job performance. Jurisdiction is invoked under 28 U.S.C. § 1332. Count II is brought pursuant to Title VII of the Civil Rights Act of

1964 (42 U.S.C. § 2000e, et seq.), and alleges sex discrimination in that the defendant mandated different hair lengths for male and female employees. Jurisdiction in Count II is invoked under 28 U.S.C. § 1343(4).[1] Service upon Ozark Airlines was effected though the Secretary of the Commonwealth, the statutory agent for purposes of service of process for corporations "doing business" within the Commonwealth. Mass.Gen.Laws c. 223 § 37 and § 38. Such service, if valid under state law, is effective in this Court. F.R.Civ.P. 4(e), 4(d)(7).

The plaintiff is a male citizen of the Commonwealth of Massachusetts and the defendant, Ozark Airlines, Inc., is a corporation organized under the laws of Delaware with its principal place of business in the State of Missouri. The defendant is not a citizen of the Commonwealth of Massachusetts. The defendant has moved to dismiss this action pursuant to Rule 12(b) F.R. Civ.P. for lack of jurisdiction and insufficiency of process because the defendant is not doing business in the Commonwealth of Massachusetts.

■ The plaintiff has the burden of proving the facts necessary to establish this Court's jurisdiction under Mass.Gen.Laws c. 223 § 37 and § 38. *KVOS Incorporated v. Associated Press,* 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Aro Manufacturing Co. v. Automotive Body Research Corporation,* 352 F.2d 400 (1st Cir., 1965).

G.L. c. 223 § 38 provides:

"In an action against a foreign corporation, except an insurance company, which has a usual place of business in the commonwealth, or, *with or without such usual place of business, is engaged in or soliciting business in the commonwealth, permanently or temporarily,* service may be had in accordance with the provisions of the preceding section [37] relative to service on domestic corporations in general." (Emphasis added)

The plaintiff argues four factors which, when considered cumulatively, sufficiently establish that Ozark Airlines does engage in or solicit business in the Commonwealth of Massachusetts. Those factors are: the defendant flies charter flights into and out of the Commonwealth of Massachusetts; the defendant maintained a bank account in the Commonwealth; the defendant caused tickets for travel on its flights to be sold in the Commonwealth of Massachusetts; and the defendant solicits business in the Commonwealth of Massachusetts through a toll-free "WATTS" number.

Dealing with these contentions seriatim, the Court finds the following facts:

(1) *Charter flights.*

During the years 1970–1976, Ozark Airlines flew a total of thirty-seven (37) charter flights in and out of Logan Airport in Boston. The great majority of these flights were chartered by professional sports teams. Five of those thirty-seven flights were from a single city to Boston and then a return to the city of origin. All of the contracts for all the charter flights were

---

1. Title VII provides for an independent jurisdictional basis. That separate basis, 42 U.S.C. § 2000e–5(f)(3), provides that "[e]ach United States district court . . . shall have jurisdiction of actions brought under this subchapter." The section also provides for special venue in that an action may be brought "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." The facts suggest that the plaintiff could not meet these special venue restrictions which resulted in his pitching his jurisdiction on the more general § 1343(4) "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights . . . ."

Jurisdiction in Count I is invoked pursuant to 28 U.S.C. § 1332, the diversity question, although it is clear that both counts are basically complaints of sex discrimination.

made outside of Massachusetts and were made with persons and entities that were residents of states other than Massachusetts. None of these charter flight contracts were made by or through a Massachusetts travel agency or any employee thereof. The defendant flew no scheduled flights into or out of Massachusetts during the years 1970–1976. In flying in and out of the Commonwealth on these charter flights, the defendant purchased fuel, and hired service facilities at the airport. It also paid landing fees at the airport. A total of $25,362.58 was spent in the years 1972–1976 for these various services.[2]

(2) *Maintaining a bank account.*

During the years 1973–1976, Ozark Airlines maintained a bank account at the New England Merchants Bank in Boston solely for the purpose of settling accounts. The balance sheet of the New England Merchants Bank which contains undisputed statistical data reflecting deposits, withdrawals and closing monthly balances during the years 1973–1976 shows the following:

| Period | Beg. Balance | Deposits | Withdrawals | Ending Balance |
|---|---|---|---|---|
| 1973 | | | | |
| 1/2–1/15 | 18,526.69 | 17,434.42 | 28,000.00 | 7,961.11 |
| 1/16–1/31 | 7,961.11 | 15,248.15 | 11,000.00 | 12,209.26 |
| 2/1–2/28 | 12,209.26 | 26,997.70 | 22,000.00 | 17,206.96 |
| 3/1–3/30 | 17,206.96 | 34,883.15 | 32,011.80 | 20,078.31 |
| 4/1–4/30 | 20,078.31 | 30,163.14 | 39,000.00 | 11,241.45 |
| 5/1–5/31 | 11,241.45 | 10,242.94 | 15,185.93 | 6,298.46 |
| 6/1–6/30 | 6,298.46 | 1,238.66 | 6,284.63 | 1,252.49 |
| 7/1–7/31 | 1,252.49 | 5,509.43 | 2,575.76 | 4,186.16 |
| 8/1–8/31 | 4,186.16 | 40,353.34 | 26,042.72 | 18,496.78 |
| 9/1–9/30 | 18,496.78 | 27,012.98 | 40,000.00 | 5,509.76 |
| 10/1–10/31 | 5,509.76 | 41,198.21 | 29,000.00 | 17,707.97 |
| 11/1–11/30 | 17,707.97 | 49,554.16 | 43,058.75 | 24,203.38 |
| 12/1–12/31 | 24,203.38 | 37,531.91 | 54,000.00 | 7,735.29 |
| 1974 | | | | |
| 1/1–1/14 | 7,735.29 | 23,999.01 | 20,000.00 | 11,734.30 |
| 1/15–1/31 | 11,734.30 | 15,934.45 | 20,081.64 | 7,587.11 |
| 2/1–2/28 | 7,587.11 | 18,155.54 | 15,000.00 | 10,742.65 |
| 3/1–3/31 | 10,742.65 | 28,142.02 | 27,158.43 | 11,726.24 |
| 4/1–4/30 | 11,726.24 | 35,263.38 | 33,000.00 | 13,989.62 |
| 5/1–5/31 | 13,989.62 | 49,854.57 | 32,000.00 | 31,844.19 |
| 6/1–6/30 | 31,844.19 | 34,797.12 | 45,000.00 | 21,641.31 |
| 7/1–7/31 | 21,641.31 | 47,084.90 | 50,000.00 | 18,726.21 |
| 8/1–8/31 | 18,726.21 | 48,473.98 | 50,259.02 | 16,941.17 |
| 9/1–9/30 | 16,941.17 | 42,502.91 | 48,000.00 | 11,444.08 |
| 10/1–10/31 | 11,444.08 | 40,777.01 | 34,000.00 | 18,221.09 |
| 11/1–11/30 | 18,221.09 | 44,306.52 | 65,010.03 | (2,482.42) |
| 12/1–12/31 | (2,482.42) | 42,044.10 | 28,161.66 | 11,400.02 |
| 1975 | | | | |
| 1/1–1/10 | 11,400.02 | 10,253.85 | 16,000.00 | 5,653.87 |
| 1/11–1/31 | 5,653.87 | 17,333.93 | 13,093.89 | 9,893.91 |
| 2/1–2/28 | 9,893.91 | 29,021.34 | 14,092.33 | 24,822.92 |
| 3/1–3/31 | 24,822.92 | 44,188.22 | 59,122.07 | 9,889.07 |
| 4/1–4/30 | 9,889.07 | 38,679.24 | 37,000.00 | 11,568.31 |
| 5/1–5/30 | 11,568.31 | 40,135.88 | 44,263.64 | 7,440.55 |
| 6/1–6/30 | 7,440.55 | 56,405.90 | 50,000.00 | 13,846.45 |
| 7/1–7/31 | 13,846.45 | 58,016.14 | 58,000.00 | 13,862.59 |
| 8/1–8/31 | 13,862.59 | 51,151.51 | 51,000.00 | 14,014.10 |

**2.** The expense figures for 1970, 1971 were not available. The total income from all charter flights was $412,423.00, but an examination of the flights reveals that Boston was but one of many cities on the itinerary and an allocation of income among those cities would be almost impossible. In any event, revenue under these circumstances is irrelevant. *Vencedor Manufacturing Co., Inc. v. Gougler Industries*, 557 F.2d 886 (1st Cir., 1977).

| Period | Beg. Balance | Deposits | Withdrawals | Ending Balance |
|---|---|---|---|---|
| 9/1–9/30 | 14,014.10 | 41,853.69 | 46,000.00 | 9,867.79 |
| 10/1–10/31 | 9,867.79 | 60,382.29 | 27,000.00 | 43,250.08 |
| 11/1–11/30 | 43,250.08 | 31,043.44 | 57,745.37 | 16,548.15 |
| 12/1–12/31 | 16,548.15 | 57,876.68 | 59,000.00 | 15,424.83 |
| 1976 | | | | |
| 1/1–1/16 | 15,424.83 | 25,350.85 | 28,040.01 | 12,735.67 |
| 1/17–1/30 | 12,735.67 | 22,530.70 | 24,348.51 | 10,917.86 |
| 2/1–2/28 | 10,917.86 | 27,517.91 | 31,008.20 | 7,427.57 |
| 3/1–3/31 | 7,427.57 | 41,188.98 | 33,110.81 | 15,505.74 |
| 4/1–4/30 | 15,505.74 | 65,912.60 | 58,000.00 | 23,418.34 |
| 5/1–5/31 | 23,418.34 | 54,993.88 | 68,000.00 | 10,412.22 |
| 6/1–6/30 | 10,412.22 | 70,794.29 | 55,000.00 | 26,206.51 |
| 7/1–7/30 | 26,206.51 | 52,477.28 | 56,000.00 | 22,683.79 |
| 8/1–8/31 | 22,683.79 | 51,011.39 | 65,108.48 | 8,586.70 |
| 9/1–9/30 | 8,586.70 | 44,970.24 | 35,000.00 | 18,556.94 |
| 10/1–10/30 | 18,556.94 | 65,392.29 | 68,516.12 | 15,433.11 |
| 11/1–11/30 | 15,433.11 | 55,758.21 | 40,000.00 | 31,191.32 |
| 12/1–12/27 | 31,191.32 | 64,302.24 | 95,493.56 | –0– |

Deposits made into the New England Merchants Bank account reflect deposits made by independent travel agents in Rhode Island, Maine, New Hampshire, Vermont, Connecticut, New York, Pennsylvania, Ohio, New Jersey and Massachusetts, of revenue received by those agents (minus their commissions) from the sale of tickets for travel either exclusively on defendant's airline or for travel on defendant's airline (first leg) and subsequent travel on another airline. Any funds so deposited which are for travel on an airline other than the defendant's are reimbursed by the defendant at account settlements conducted at the Chase Manhattan Bank in New York.

### (3) *Causing tickets to be sold.*

There are 15 independent, licensed travel agencies in Massachusetts which have plates issued by the defendant for the imprinting of tickets for travel on defendant's airline. The employees of these agencies are not agents of the defendant. A fixed percentage commission is paid to independent licensed travel agents of the Air Traffic Conference which sell tickets for space aboard flights on the defendant airline between points outside the Commonwealth of Massachusetts. There were, however, no authorized agents for the sale of tickets nor was there any agent employed by or through any office operated by Ozark. Ozark is not licensed to do business in Massachusetts, nor does it maintain any office, warehouse, plant, or employ any person or agent in the Commonwealth. It does not advertise or solicit any business in Massachusetts. It has no regular telephone listing and no mailing address in Massachusetts.

### (4) *The "WATTS" number.*

The defendant has a "WATTS" or "800" area code number through which persons in Massachusetts can call without toll charges to make reservations and order tickets for travel on Ozark Airlines. It was acquired on January 12, 1972. The number can be obtained by calling toll-free information, not regular information. There is no telephone listing in either the white or yellow pages of the Boston telephone directory.

Federal jurisdiction under G.L. c. 223 §§ 37, 38 may be asserted over foreign corporations "in the manner prescribed by state law." *Pulson v. American Rolling Mill Co.,* 170 F.2d 193 (1st Cir., 1948). *Waltham Precision Instrument Co. v. McDonnell Air Corp.,* 310 F.2d 20 (1st Cir., 1962).[3] The history of Massachusetts law

---

**3.** This is different than jurisdiction asserted under the Massachusetts long-arm statute, M.G.L. c. 223A. The long-arm statute permits a party to reach outside the state to gain jurisdiction over a foreign corporation, when a cause of

relative to the assertion of jurisdiction over foreign corporations has been conservative, initially because of constitutional restraints. *Waltham Precision, supra.* These due process fears, however, were substantially allayed by the Supreme Court in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). If a corporation exercises the privilege of conducting activities within the state, it enjoys the benefits and protection of the laws of that state. So the state can assert jurisdiction and the corporation has an obligation to respond to suits within that state. *International Shoe, supra.*

In *Caso v. Lafayette Radio Electronics Corporation,* 370 F.2d 707 (1st Cir., 1966) the First Circuit reviews Massachusetts law, first discussing two cases where personal jurisdiction was found. In both *Wyshak v. Anaconda Copper Mining Co.,* 328 Mass. 219, 103 N.E.2d 230 (1952) and *Jet Mfg. Co. v. Sanford Ink Co.,* 330 Mass. 173, 113 N.E.2d 252 (1953) service was made on a resident sales manager whose job it was to solicit business to promote good will, and to investigate complaints. Under those facts, the court held that jurisdiction was established. However, two factors were present in both cases that are not present here. First, the court specifically assumed that the cause of action arose out of business solicited in Massachusetts and the court also found that the activities amounted to more than "mere solicitation."

The Court said in *Caso, supra :*

"From these cases we derive two propositions about the Supreme Judicial Court's treatment of jurisdiction over foreign corporations: (a) despite the language of Mass.G.L. c. 223 § 38, and despite the court's intimations to the contrary, it has never extended jurisdiction over a corporation whose activities in the state amounted to no more than the constitutionally permissible 'minimum contact'—it has regularly found more than 'mere solicitation'; (b) even when it has found solicitation plus some other activity, it has not extended jurisdiction when the cause of action did not arise out of the activities in Massachusetts. On the other hand, where the corporation's activities more closely approximated the regular conduct of a domestic corporation—that is to say, where the defendant was clearly 'doing business' in Massachusetts—the court has allowed jurisdiction for a transitory cause of action. *Trojan Eng'r Corp. v. Green Mountain Power Corp.,* 1936, 293 Mass. 377, 200 N.E. 117."

The Court then set out two conditions under which Massachusetts courts would assert jurisdiction over a foreign corporation served under § 38:

"(a) whenever the corporation's activities affect the commerce of Massachusetts substantially so that the state has an interest in regulating the general conduct of those activities ('doing business'), or (b) whenever the corporation's activities in Massachusetts have so affected the particular transaction at issue that it is appropriate to hear the claim in a Massachusetts court." [4]

▪ Applying the facts set forth by the plaintiff to these two conditions this Court concludes that the contacts are not sufficient to establish personal jurisdiction over the defendant.[5]

---

action arises out of the defendants "minimum contacts" with the state.

4. This condition has not been met on the face of the complaint. The plaintiff's claim does not appear to have the remotest contact with any of the corporation's activities within the Commonwealth. In fact, if the cause of action arose out of activities within the Commonwealth, jurisdiction could be predicated on the "long arm statute," G.L. c. 223a.

5. The defendant contends that the question as to whether there were sufficient contacts is to be measured at the time of service of process citing *Turner v. Mineral Lands Corp.,* 308 Mass. 531, 533, 33 N.E.2d 282 (1941). Recent authorities appear to consider the activities over a broader period of time. See, e. g., *Walsh v. National Seating Company, Inc.,* 411 F.Supp. 564 (D.Mass., 1976). In the context of this decision the Court has considered the business activities of Ozark Airlines from 1970–

The defendant derived revenue from the charter flights and the out of state flights booked by independent agents. The sale of tickets for travel outside Massachusetts is not "doing business." *Philadelphia and Reading Railway v. McKibbin*, 243 U.S. 264, 370 S.Ct. 280, 61 L.Ed.2d 710 (1917); *McManus v. Capital Airlines*, 166 F.Supp. 301 (E.D.N.Y., 1958). The charter flights were isolated events and had minimal effect on Massachusetts commerce in its use of the airport facilities. In conjunction with these flights the defendant maintained a bank account which in itself alone is not doing business. *Turner v. United Mineral Land Corp.*, 308 Mass. 531, 537, 33 N.E.2d 282 (1941).

The defendant purchased a "WATTS" line in order that toll-free calls could be made by persons wishing to charter or agents wishing to book persons on the defendant's airline. In *Walsh v. National Seating Co., Inc.*, 411 F.Supp. 564 (D.Mass., 1976) the court found personal jurisdiction over the defendant, Motor Coach. Among the factors which the court found significant in establishing that the defendant was sufficiently involved in the business activity of the Commonwealth was the fact that the defendant maintained a regular phone. listing which indicated that they held themselves out as providers of service and, as such, were soliciting business in the Commonwealth. There is no regular phone listing in the instant case. The only evidence before the Court regarding phone listings is that the defendant maintained a "WATTS" line. A "WATTS" line, while available through toll-free telephone information, exists primarily to allow a customer to make toll-free calls. The purpose is not to promote business in the same way as a regular phone listing. See *Gardner v. Braniff International*, 312 F.Supp. 844 (D.Conn., 1970).

The Court agrees with plaintiff's argument that the total of the defendant's activities must be considered to determine whether Massachusetts has an "interest" in regulating conduct because the corporation's activities "affect the commerce" of the Commonwealth. Taking the sum of these activities, the plaintiff falls short of showing that the defendant "purposefully [and intentionally] avails itself of the privilege of conducting business within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Policy considerations also dictate that out of state business should be encouraged to deal with people in Massachusetts by minimizing the burdens incident to such dealings.

The Court is mindful of the burden it places upon the plaintiff to press his claim in a foreign tribunal, but, under all the circumstances, this case is especially appropriate for that action.[6] Where contact is slight, jurisdiction may require some relationship between the cause of action and the foreign corporation's local activities. *Walsh v. National Seating Co., Inc., supra*. There is no such claim, nor does the Court discern any such relationship here.

Accordingly, the defendant's motion to dismiss for lack of jurisdiction is ALLOWED.

1976 and not just at the time of service of process in 1976.

**6.** See Footnote 1.